Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
 *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
 *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO; CORY MCCARTHY, ANDREW POLLICK; DAVID MOORE, and CRISTINA OLIVAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| A.J.P. and A.M.P., minors by and through their guardian ad litem Cynthia Nunez, individually and as successor in interest to Albert Perez, deceased; and PATRICIA RUIZ, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; and DOES 1-10, Inclusive,<br><br>Defendant. | Case No. 5:22-CV-01291 SSS (SHKx)<br><br>*[Honorable Sunshine Suzanne Sykes, Magistrate Judge, Shashi H. Kewalramani]*<br><br>**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with:*<br>1. Notice of Motion and Motion;<br>2. Declaration of Kayleigh Andersen;<br>3. Declaration of Sergeant Gaytan;<br>4. Declaration of Corporal McCarthy;<br>5. Declaration of Corporal Olivas;<br>6. Declaration of Corporal Pollick<br>7. Declaration of Deputy Moore<br>8. Declaration of Deputy Stone;<br>9. Declaration of Sergeant Scalise; and<br>10. [Proposed] Order<br><br>Date: April 19, 2024<br>Time: 2:00 p.m.<br>Crtrm.: Courtroom 2, 2nd Floor<br><br>*Action Filed:*   07/22/2022 |

---

**TO THIS HONORABLE COURT AND THE PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

In accordance with C.D L.R. 56-1 and this Court's Standing Order, defendants COUNTY OF SAN BERNARDINO ("County"); CORY MCCARTHY ("Corporal McCarthy"), ANDREW POLLICK ("Corporal Pollick"); DAVID MOORE ("Deputy Moore"), and CRISTINA OLIVAS ("Corporal Olivas") ("Defendnat Deputies" and collectively "Defendants") submit this Statement of Uncontroverted Facts and Genuine Disputed in support of their Motion for Summary Judgment.

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1. On Sunday, August 29, 2021, at approximately 1726 hours, San Bernardino County Sheriffs' Dispatch received a 911 call for service at 16576 Zenda Street #1, Victorville. | Call Log History (Ex. "A") at pg. 1. |
| 2. The reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket. | Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3. |
| 3. Helen Fregoso's daughter, Renee Caudillo, advised Sheriffs Dispatch that Perez told her that she was causing him problems and thought people were after him, and that he pulled out a black gun from his pocket. | Call Log History (Ex. "A") at pg. 1. |
| 4. Deputy Steven Carter was the first to arrive at the incident location, and located Perez in the garage and observed a black gun in Perez' hand. | Call Log History (Ex. "A") at pg. 2. |
| 5. Deputy Steven Carter ordered Perez to drop the gun, but Perez did not comply. | Call Log History (Ex. "A") at pg. 2. |

| | | |
|---|---|---|
| 6. | Perez remained in the garage with the gun in his hand and refusing commands from deputies to drop the gun. | Call Log History (Ex. "A") at pgs. 2, 3, 4 |
| 7. | At approximately 1900 hours, Sergeant Luke Gaytan ("Sergeant Gaytan") requested via text message that all members of the San Bernardino County Sheriff's Department Specialized Enforcement Division Team 1 ("SED Team") respond to Zenda Street in Victorville for a barricade situation where the subject had threatened a female with a firearm, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live. | Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. |
| 8. | Sergeant Gaytan also notified the SED Team that a crisis negotiator, Negotiator Anthony Alcala, was also responding to the incident location. | Gaytan Decl., ¶ 3; McCarthy Decl., ¶ 3; Olivas Decl., ¶ 3; Pollick Decl., ¶ 3; Moore Decl., ¶ 3; Stone Decl., ¶ 3. |
| 9. | Sergeant Gaytan had all members of the SED Team, which included Sergeant Gaytan, Corporal Andrew Pollick, Deputy Josh Stone, Deputy David Moore, Corporal Cristina Olivas, Corporal Cory McCarthy, and Corporal Greg Gary, meet at the Victorville Library just west of the incident location for a briefing prior to arriving at the subject location. | Gaytan Decl., ¶ 4; McCarthy Decl., ¶ 4; Olivas Decl., ¶ 4; Pollick Decl., ¶ 4; Moore Decl., ¶ 4; Stone Decl., ¶ 4; Pollick Depo. (Ex. "C") at 5:25-6:4; McCarthy Depo. (Ex. "D") at 22:6-13. |
| 10. | During this briefing, the SED Team learned that patrol deputies from the Victorville Sheriff's Station were negotiating with the suspect, Perez, who was seated on a stool at the rear | Gaytan Decl., ¶ 5; McCarthy Decl., ¶ 5; Olivas Decl., ¶ 5; Pollick Decl., ¶5; Moore Decl., ¶ 5; Stone Decl., ¶ 5; McCarthy Depo. (Ex. "D") at 23:5-13; Perez Photos (Ex. "K"). |

| | | |
|---|---|---|
| | of the garage behind a pool table and was in possession of a gun. | |
| | 11. The SED Team also learned that the door from the garage to the home had been locked by the homeowner, and that both sides of the garage were contained by patrol units and they were trying to de-escalate the situation by attempting to convince him to surrender peacefully, but he refused to put the gun down. | Gaytan Decl., ¶ 6; McCarthy Decl., ¶ 6; Olivas Decl., ¶ 6; Pollick Decl., ¶ 6; Moore Decl., ¶ 6; Stone Decl., ¶ 6. |
| | 12. During this briefing, the SED Team also developed an operational plan, which included medical plans, gas plans, and less lethal plans, before going to the incident location. | Gaytan Decl., ¶ 7; McCarthy Decl., ¶ 7; Olivas Decl., ¶ 7; Pollick Decl., ¶ 7; Moore Decl., ¶ 7; Stone Decl., ¶ 7; Pollick Depo. (Ex. "C") at Pollick Depo. (Ex. "C") at 5:25-6:4, 22-24. |
| | 13. The SED Team's medical plan included requesting Victorville Fire Department, American Medical Response, and air rescue, the sheriff's helicopter, to be on standby in the event that there was a medical emergency, the BearCat and Corporal Olivas' vehicle were also set up as medical extract vehicles. | Gaytan Decl., ¶ 8; McCarthy Decl., ¶ 8; Olivas Decl., ¶ 8; Pollick Decl., ¶ 8; Moore Decl., ¶ 8; Stone Decl., ¶ 8; McCarthy Depo. (Ex. "D") at 26:14-24. |
| | 14. The SED Team's gas plans included Corporal Pollick and Deputy Moore having chemical agents should the need and opportunity to use them arise, and Corporal Pollick developed a chemical agent plan for the house. The SED Team developed numerous less lethal plans to be used at the appropriate point if the opportunity presented itself. | Gaytan Decl., ¶ 9; McCarthy Decl., ¶ 9; Olivas Decl., ¶ 9; Pollick Decl., ¶ 9; Moore Decl., ¶ 9; Stone Decl., ¶ 9; Pollick Depo. (Ex. "C") at 7:8-12. |
| | 15. The SED Team's operational plan included containing both sides of the | Gaytan Decl., ¶ 10; McCarthy Decl., ¶ 10; Olivas Decl., ¶ 10; Pollick Decl., ¶ |

4
**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| | garage, with Corporal McCarthy, Corporal Olivas and Deputy Stone to be positioned on the southeast corner of the garage, with Corporal Olivas with a shield and her pistol, Corporal McCarthy behind Corporal Olivas with lethal cover, and Deputy Stone with a less lethal 40 mm multi-launcher. On the other side, Deputy Moore, Corporal Pollick, and Sergeant Gaytan were to be positioned on the southwest corner of the garage, with Deputy Moore with a shield and his pistol, Corporal Pollick behind Deputy Moore with lethal cover, and Sergeant Gaytan with a less lethal 40 mm single-launcher. | 10; Moore Decl., ¶ 10; Stone Decl., ¶ 10. |
| 16. | Additionally, the SED Team was going to position the BearCat, which is an armored rescue vehicle, in the driveway and face it towards the garage to light up the garage because it was dark outside. | Gaytan Decl., ¶ 11; McCarthy Decl., ¶ 11; Olivas Decl., ¶ 11; Pollick Decl., ¶ 11; Moore Decl., ¶ 11; Stone Decl., ¶ 11; McCarthy Depo. (Ex. "D") at 26:3-7; Moore Depo. (Ex. "E") at 19:10-18. |
| 17. | Sergeant Gaytan made it clear to the SED Team that if the suspect was to separate himself from the firearm, the team could not allow him to gain access back to that firearm because we did not want him to be able to shoot at us or any members of the public. | Gaytan Decl., ¶ 12; McCarthy Decl., ¶ 12; Olivas Decl., ¶ 12; Pollick Decl., ¶ 12; Moore Decl., ¶ 12; Stone Decl., ¶ 12; Pollick Depo. (Ex. "C") at 6:25-7:7; McCarthy Depo. (Ex. "D") at 45:19-46:2, 76:2-8; Moore Depo. (Ex. "E") at 29:15-30:1; Olivas Depo. (Ex. "F") at 20:18-21:2; Stone Depo. (Ex. "G") at 28:19-29:8. |
| 18. | Additionally, during the briefing, the SED Team learned that there was a family who stayed in their home in the northwest corner of the multi-unit | Gaytan Decl., ¶ 13; McCarthy Decl., ¶ 13; Olivas Decl., ¶ 13; Moore Decl., ¶ 13; Stone Decl., ¶ 13. |

| | | |
|---|---|---|
| | complex. | |
| | 19. The SED Team made contact with the family, and the family decided to stay in the home as there was an elderly female at the home who was not easily mobile, and the SED Team advised the family to shelter in place. | Gaytan Decl., ¶ 13; McCarthy Decl., ¶ 13; Olivas Decl., ¶ 13; Pollick Decl., ¶ 13; Moore Decl., ¶ 13; Stone Decl., ¶ 13. |
| | 20. The SED Team arrived to the incident location with the BearCat and met with the patrol sergeant to gain additional information. | Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶14. |
| | 21. The SED Team learned that Perez was kind of nodding off, he was kind of lucid, and that it was unclear if he was under the influence of any narcotics or alcohol. | Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶ 14. |
| | 22. Due to the patrol deputies being fatigued after hours of attempted negotiations and attempts to gain compliance from Perez, the SED Team took over and took their assigned positions on the corners of the garage as was discussed in briefing. | Gaytan Decl., ¶ 15; McCarthy Decl., ¶ 16; Olivas Decl., ¶ 16; Pollick Decl., ¶ 16; Moore Decl., ¶ 16; Stone Decl., ¶ 15. |
| | 23. Perez remained seated directly behind the pool table, approximately 16 feet away from the garage opening, with the gun in his right hand, and looking back and forth between the members of the SED team on each side of the garage. | McCarthy Depo. (Ex. "D") at 26:25-27:3, 28:3-7, 30:6-14; Moore Depo. (Ex. "E") at 10:21-23, 22:11-14, 18-19, 23-24; Olivas Depo. (Ex. "F") at 10:20-11:6: Alcala Depo. (Ex. "H") at 25:6-19; Gaytan Depo. (Ex. "I") at 11:22-25; Perez Photos (Ex. "K"); Garage Photos (Ex. "L"). |
| | 24. Before the lethal force encounter, Corporal McCarthy changed positions from the side of the garage to the BearCat in the driveway so that he could have a different vantage | McCarthy Decl., ¶ 16. |

| | | |
|---|---|---|
| | point to see Perez in the garage. | |
| | 25. During the incident, Negotiator Alcala was the assigned crisis negotiator and attempted numerous times to negotiate with Perez and gain his compliance. | Gaytan Decl., ¶ 16; McCarthy Decl., ¶ 17; Olivas Decl., ¶ 17; Pollick Decl., ¶ 17; Moore Decl., ¶ 17; Stone Decl., ¶ 16; McCarthy Depo. (Ex. "D") at 27:9-22, 28:8-14; Gaytan Depo. (Ex. "I") at 17:12-15; Incident Audio (Ex. "J"). |
| | 26. During the negotiation, Negotiator Alcala was able to convince Perez to put the gun down. Perez put the gun by the stool behind the pool table, and the deputies viewed this as an act of compliance. | Pollick Depo. (Ex. "C") at 12:9-14, 18:19-19:1; McCarthy Depo. (Ex. "D") at 39:3-13, 67:8-12; Moore Depo. (Ex. "E") at 11:3-15, 12:23-25; Olivas Depo. (Ex. "F") at 13:7-14; Stone Depo. (Ex. "G") at 20:22-21:14, 30:22-24, 48:10-15; Alcala Depo. (Ex. "H") at 32:24-33:9, 34:13-35:11; Incident Audio (Ex. "J") at 25:00-27:00. |
| | 27. Then, Negotiator Alcala encouraged Perez to stand up and walk towards the deputies, Perez complied and walked toward the front of the garage. | Pollick Depo. (Ex. "C") at 13:2-6, 19:17-21; McCarthy Depo. (Ex. "D") at 41:13-14, 67:13-16; Olivas Depo. (Ex. "F") at 13:15-20, 14:5-13; Moore Depo. 10:11-13, 11:24-12:10; Stone Depo. (Ex. "G") at 21:18-21, 25, 22:1-5, 48:10-23; Alcala Depo. (Ex. "H") at 35:12-20, 41:6-15; Incident Audio (Ex. "J") at 27:00-28:00. |
| | 28. As Perez started to move towards the front of the garage, where the SED Team was waiting, Sergeant Gaytan instructed Perez to stop so that the SED Team could safely take Perez into custody. | Gaytan Decl., ¶ 16; McCarthy Decl., ¶ 17; Olivas Decl., ¶ 17; Pollick Decl., ¶ 17; Moore Decl., ¶ 17; Stone Decl., ¶ 16; Stone Depo. (Ex. "G") at 22:6-8, 18-21, 26:19-21, 48:16-18; Alcala Depo. (Ex. "H") at 41:11-17, 47:20-24; Gaytan Depo. (Ex. "I") at 20:20-24; Incident Audio (Ex. "J") at 28:00-31:50. |
| | 29. Sergeant Gaytan communicated to Perez that the deputies were going to have to take him into custody, which | Moore Depo. (Ex. "E") at 21:22-22:1, 41:10-16; Olivas Depo. (Ex. "F") at 19:24-20:7, 49:3-25; Stone Depo. (Ex. |

7

| | | |
|---|---|---|
| | appeared to the deputies to frustrate Perez, and lead the deputies to believe that Perez was no longer cooperating. | "G") at 48:16-18; Gaytan Depo. (Ex. "I") at 40:5-13, 23-25, 41:1-19; Incident Audio (Ex. "J") at 28:00-31:50. |
| 30. | For a few minutes, while Sergeant Gaytan continued to talk to Perez to have him peacefully surrender, Perez stood parallel to the middle of the pool table, approximately eight feet north of the garage opening and approximately eight feet away from the gun's location, Perez then put his hands up and shook his head back and forth, with an irritated and frustrated look, without making eye contact with anyone. | Pollick Depo. (Ex. "C") at 13:7-19; McCarthy Depo. (Ex. "D") at 47:1-12, 53:3-7; Moore Depo. (Ex. "E") at 14:18-21, 21:22-22:1, 39:24-25, 40:1, 8-9, 24-25, 41:1-3, 10-16; Stone Depo. (Ex. "G") at 31:8-10; Gaytan Depo. (Ex. "I") at 31:5-14, 40:23-41:19; Incident Audio (Ex. "J") at 28:00-31:50; Garage Photos (Ex. "L"). |
| 31. | Suddenly, Perez turned slightly east, stepping back with his left foot, and pivoting on his right foot. | Pollick Depo. (Ex. "C") at 20:25-21:8, 15-25, 22:1; McCarthy Depo. (Ex. "D") at 52:19-24, 67:17-19, 70:2-9; Moore Depo. (Ex. "E") at 36:12-14, 18-24, 41:10-22; Olivas Depo. (Ex. "F") at 20:3-7; Stone Depo. (Ex. "G") at 27:4-28:4, 46:11-18, 48:19-49:6; Alcala Depo. (Ex. "H") at 48:7-15; Gaytan Depo. (Ex. "I") at 32:18-33:4, 40:5-13; Incident Audio (Ex. "J") at 28:00-31:50. |
| 32. | As soon as Perez stepped back, Deputy Stone deployed a less-lethal 40-millimeter round, as was discussed in the SED Teams planning briefing, which hit Perez somewhere between his waist and the top of his shoulders. | Pollick Depo. (Ex. "C") at 20:25-21:8; McCarthy Depo. (Ex. "D") at 52:25-53:12, 70:2-9; Moore Depo. (Ex. "E") at 34:23-35:17, 36:8-14, 41:20-22, 54:10-15; Olivas Depo. (Ex. "F") at 21:16-22:9, 50:1-3; Stone Depo. (Ex. "G") at 27:4-28:4, 8-25, 29:1-8, 12-17, 46:11-18, 48:19-49:6; Gaytan Depo. (Ex. "I") at 28:18-29:9; Incident Audio (Ex. "J") at 31:49-31:57. |

8
**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 33. Sergeant Gaytan and Deputy Stone each deployed another less-lethal round at Perez, which also appeared to strike Perez at center mass. However, the less-lethal rounds appeared to be ineffective in gaining Perez' compliance. | Pollick Depo. (Ex. "C") at 23:17-25:10; McCarthy Depo. (Ex. "D") at 56:22-57:3, 67:24-68:2; Moore Depo. (Ex. "E") at 34:23-35:17, 54:10-15; Olivas Depo. (Ex. "F") at 22:10-19; Alcala Depo. (Ex. "H") at 49:17-20; Gaytan Depo. (Ex. "I") at 34:9-18; Incident Audio (Ex. "J") at 31:49-31:57. |
| 34. Although it appeared to the deputies that Perez was hit with three (3) less-lethal rounds, he accelerated and ran toward where the gun was located at the back of the pool table. | Pollick Depo. (Ex. "C") at 23:12-17, 27:23-28:4, 30:17-18, 22-25, 41:16-20, 42:6-11; McCarthy Depo. (Ex. "D") at 65:19-24, 68:3-11, 24-25, 69:1, 6-10; Moore Depo. (Ex. "E") at 35:22-36:3, 41:23-42:1, 54:16-18, 67:15, 19-21; Gaytan Depo. (Ex. "I") at 38:1-23. |
| 35. After the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. | Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 36. The deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. | Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1- |

9
**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| | | 23. |
| 37. | Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. | Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23. |
| 38. | Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. | Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 39. | The deputies at the scene retrieved an SED robot, to confirm that Perez was no longer a threat. Once it was confirmed Perez was no longer moving, the SED Team approached and secured to scene. | Gaytan Decl., ¶ 18; McCarthy Decl., ¶ 19; Olivas Decl., ¶ 19; Pollick Decl., ¶ 19; Moore Decl., ¶ 19; Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 44:9-13, 45:4-9, McCarthy Depo. (Ex. "D") at 70:11-12, 16-19; Incident Audio (Ex. "J") at 32:10-36:00. |
| 40. | Corporal Pollick and Corporal McCarthy approached Perez and saw that Perez was laying on top of the gun. | Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 71:1-4, 8-12; Moore Depo. (Ex. "E") at 82:1-11, 83:13-22; Incident Audio (Ex. "J") at 36:00-37:20. |
| 41. | Deputy Stone saw the gun sticking out from under Perez' stomach where his hands were also located, and kicked it away from him so that Corporal Pollick and Corporal McCarthy could start to provide medical aid. | Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 70:16-19, 71:1-4; Moore Depo. (Ex. "E") at 81:14-25, Olivas Depo. (Ex. "F") at 52:14-18; Incident Audio (Ex. "J") at 36:00-37:20. |
| 42. | Corporal Pollick and Corporal McCarthy, who are certified EMTs, provided immediate medical aid to Perez, who was still breathing when | Gaytan Decl., ¶ 18; McCarthy Decl., ¶ 19; Olivas Decl., ¶ 19; Pollick Decl., ¶ 19; Moore Decl., ¶ 19; Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 45:10- |

| | | |
|---|---|---|
| | they approached him. | 14, 46:3-14, 17-20, 47:8-20; McCarthy Depo. (Ex. "D") at 70:22-24, 71:3-4, 17-22; Olivas Depo. (Ex. "F") at 57:12-17; Incident Audio (Ex. "J") at 37:20-39:30. |
| 43. | Victorville Fire Department and American Medical Response were staged in the area, and responded and provided medical treatment immediately after the scene was secured. | Pollick Depo. (Ex. "C") at 46:21-47:4; McCarthy Depo. (Ex. "D") at 74:18-21, 75:1-17; Olivas Depo. (Ex. "F") at 57:12-23. |
| 44. | Perez was transported to Victor Valley Global Medical Center for treatment. | Pollick Depo. (Ex. "C") at 46:15-16. |
| 45. | The deputies on the scene were not able to give commands to Perez before to lethal force encounter occurred as the situation was very dynamic, uncertain, and rapidly-evolving. | Pollick Depo. (Ex. "C") at 26:9-16, 33:18-23; Moore Depo. (Ex. "E") at 51:6-10 |
| 46. | San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, states that a deputy may use deadly force to protect himself or others from what he reasonably believes to be a threat of death or serious bodily injury. | Pollick Depo. (Ex. "C") at 56:13-19; Moore Depo. (Ex. "E") at 65:17-18, 22-24, 66:7-10, 14-18; Olivas Depo. (Ex. "F") at 58:11-14; Use of Force Policy (Ex. M"). |
| 47. | Since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore, Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves or others from what they | Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M"). |

11
**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| reasonably believe to be an immediate threat of death or serious bodily injury. | |
|---|---|

## CONCLUSIONS OF LAW

1.  Defendant Deputies are entitled to judgment on plaintiffs' first cause of action for excessive force under 42 U.S.C. § 1983 because under the uncontroverted facts, Defendant Deputies' use of force was objectively reasonable under the totality of the circumstances.  Further, there is no evidence that Defendant Deputies violated Perez' clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

2.  Defendant Deputies are entitled to judgment on plaintiffs' second cause of action for denial of medical care under 42 U.S.C. § 1983 because medical care was promptly given and summoned to the scene when it was safe to do so.  Further, there is no evidence that Defendant Deputies violated the Perez' clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

3.  Defendant Deputies are entitled to judgment on plaintiffs' third cause of action for due process/ interference with familial relations under 42 U.S.C. § 1983 because there is no evidence that Defendant Deputies acted with deliberate indifference and/or a purpose to harm unrelated to legitimate law enforcement objectives.  Further, there is no evidence that Defendant Deputies violated any clearly established constitutional rights at the time of the incident, which entitles them to qualified immunity.

4.  Defendant County of San Bernardino is entitled to judgment on plaintiffs' fourth cause of action for *Monell* Liability – inadequate training under 42 U.S.C. § 1983 because Defendant Deputies used only objectively reasonable force under the totality of the circumstances.  Further, there is no evidence that the County

failed to train its deputies.

5. Defendant County of San Bernardino is entitled to judgment on plaintiffs' fifth cause of action for *Monell* Liability – unconstitutional custom, practice, and policy under 42 U.S.C. § 1983 because Defendant Deputies used only objectively reasonable force under the totality of the circumstances. Further, there is no evidence that the County had an unlawful custom, practice or policy.

6. Defendant Deputies are entitled to judgment on plaintiffs' sixth cause of action for battery and plaintiffs' seventh cause of action for negligence because Defendant Deputies used only objectively reasonable force under the totality of the circumstances. For the same reasons no constitutional violations occurred, no violations of California law were committed.

7. Defendant Deputies are entitled to judgment on plaintiffs' eighth cause of action for violation of the Bane Act because there is no evidence that Defendant Deputies acted with the specific intent to violate the Perez' right to be free from an unreasonable seizure.

8. Defendant County of San Bernardino is entitled to judgment for each of plaintiffs' state law claims, as Defendant Deputies are not liable and there is no basis for respondeat superior liability against the County. Cal. Gov. Code § 815.2(a).

9. Defendant Deputies are entitled to judgment on plaintiffs' claim for punitive damages because there is no evidence that he acted with malice, oppression, or reckless disregard for the Perez' rights during the incident.

DATED:  March 1, 2024

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Kayleigh A. Andersen, Esq.
Eugene P. Ramirez, Esq.
Lynn Carpenter, Esq.
Kayleigh A. Andersen, Esq.
Attorneys for Defendants, COUNTY OF SAN BERNARDINO; CORY MCCARTHY, ANDREW POLLICK; DAVID MOORE, and CRISTINA OLIVAS

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

On March 1, 2024, I served true copies of the following document(s) described as **STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq.
Shannon Leap, Esq.
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333
Fax: (818) 347-4118
Email: dalekgalipo@yahoo.com;
sleap@galipolaw.com;
slaurel@galipolaw.com

*ATTORNEYS FOR PLAINTIFFS, A.J.P., AND A.M.P.. ET AL.*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 1, 2024, at Los Angeles, California.

*Maria T. Castro*
Maria T. Castro

---

1

**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**