Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
  *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF
SAN BERNARDINO; CORY
MCCARTHY, ANDREW POLLICK;
DAVID MOORE, and CRISTINA
OLIVAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| A.J.P. and A.M.P., minors by and through their guardian ad litem Cynthia Nunez, individually and as successor in interest to Albert Perez, deceased; and PATRICIA RUIZ, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO; and DOES 1-10, Inclusive, <br><br> Defendant. | Case No. 5:22-CV-01291 SSS (SHKx) <br><br> *[Honorable Sunshine Suzanne Sykes, Magistrate Judge, Shashi H. Kewalramani]* <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *Filed concurrently with Defendants' Response to Plaintiffs' Statement of Genuine Disputes of Material Fact and Additional Material Facts; Evidentiary Objections to Plaintiffs' Evidence; and Defendants' Response to Plaintiffs' Evidentiary Objections* <br><br> Date: April 19, 2024 <br> Time: 2:00 p.m. <br> Crtrm.: Courtroom 2, 2nd Floor <br><br> *Action Filed:      07/22/2022* |

**TO THE COURT, PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD:**

Defendants COUNTY OF SAN BERNARDINO ("County"), CORY MCCARTHY ("Corporal McCarthy"), ANDREW POLLICK ("Corporal Pollick"), DAVID MOORE ("Deputy Moore"), and CRISTINA OLIVAS ("Corporal Olivas") ("Defendnat Deputies") (collectively "Defendants") hereby submit this Reply in Support of their Motion for Summary Judgment.  As set forth in both the underlying motion and this Reply, Defendants submit that plaintiffs A.J.P. and A.M.P., minors by and through their guardian ad litem Cynthia Nunez, individually and as successor in interest to Albert Perez, deceased; and PATRICIA RUIZ, individually ("plaintiffs"), have failed to carry their burden of setting forth admissible evidence demonstrating that they are entitled to relief on any of their claims and, therefore, Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety.


DATED:  March 22, 2024          **MANNING & KASS**
                                **ELLROD, RAMIREZ, TRESTER LLP**



                                By: _____/s/ Kayleigh A. Andersen, Esq._____
                                    Eugene P. Ramirez, Esq.
                                    Lynn Carpenter, Esq.
                                    Kayleigh A. Andersen, Esq.
                                    Attorneys for Defendants, COUNTY OF
                                    SAN BERNARDINO; CORY
                                    MCCARTHY, ANDREW POLLICK;
                                    DAVID MOORE, and CRISTINA
                                    OLIVAS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment [Doc. 45] ("Opposition") fails to carry their burden of setting forth admissible evidence demonstrating that they are entitled to relief on any of their claims and, therefore, Defendants' motion for summary judgment should be granted as to all claims.

### II.   PLAINTIFFS' RECITATION OF THE FACTS IS NOT CREDIBLE

Plaintiffs' Opposition and Separate Statement of Genuine Disputes of Material Fact and Additional Material Facts [Docs. 45, 46], make demonstrably false allegations that lack the support of admissible evidence about the facts surrounding the subject incident and patently misrepresent the deposition testimony of the deputies in an attempt to manufacture a dispute of fact.[1]

In opposing a motion for summary judgment, the opposing party must support its assertion that a material fact is genuinely disputed by (1) citing materials in the record, (2) showing the movant's materials are inadequate to establish an absence of genuine dispute, or (3) showing that the movant lacks admissible evidence to support its factual position.  *See* Fed. R. Civ. P. 56(c)(1)(A)-(B).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Further, it is insufficient to merely show that there is some "metaphysical doubt as to material facts."  *Matsushita Elec. v. Zenith Radio,* 475 U.S. 574, 576 (1986).  The plaintiff must show the existence of a genuine issue and "produce at least some 'significant probative evidence tending to support the complaint.'"  *Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 963 (9th Cir. 1990) (citations omitted).

Plaintiffs' patent misrepresentation of the events that took place during the

---

[1] Defendants' Response to Plaintiffs' Statement of Genuine Disputes of Material Fact and Response to Plaintiffs' Separate Statement of Additional Disputed Material Facts, being filed concurrently with this Reply, more fully address Plaintiffs' misstatement of the facts surrounding the subject incident and misrepresentation the deposition testimony of the deputies.

subject incident includes, but is not limited to: "Prior to the shooting, the deputies had information that Perez was mentally ill or experiencing a mental health crisis. (PAMF-48);" "the Deputies had no specific information that Perez verbally threaten . . . anyone (PAMF-49-53);" "Perez never . . . threaten to fire the gun (PAMF-55-56);" "Before Perez even started turning, Stone fired a 40 millimeter blunt impact projectile less lethal round at Perez (PAMF-71);" "The first lethal round was fired simultaneously or within the same second as the final less-lethal round (PAMF-87)." [Opposition at 8:15-18, 21-22, 9:16-17, 10:7-8.] Further, Plaintiffs' Opposition suggests that "Perez ran away from the BIP to avoid being struck by additional projectiles and did not start running until the less-lethal started (PAMF-85)." [Opposition at 10:2-3.]

However, in contrast to Plaintiffs' blithe misrepresentation of the material facts of the subject incident and patent misrepresentation of the evidence, Defendants have provided evidence in the form of deposition testimony from the deputies who were on the scene, the audio from Sergeant Luke Gaytan's recorder, and photos taken from the scene after the subject incident to demonstrate the actual events that took place during the subject incident.

Further, Plaintiffs rely on the declarations of their retained experts, Scott DeFoe and Bennet Omalu M.D. in an attempt to manufacture a dispute of fact. However, "[t]he law is clear . . . that an expert report cannot be used to prove the existence of facts set forth therein." *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999). Here, Plaintiffs' cite expert declarants, ***who have no personal knowledge of the events relevant to the encounter between Perez and the deputies***, for the proposition that these facts occurred, accordingly they are improperly supported. *See Doe v. City of San Diego*, 35 F.Supp.3d 1233, 1236–37 (S.D. Cal. 2014) (explaining that "Plaintiff has improperly supported her statement of facts by citing to the factual statements set forth by her expert witnesses in their reports rather than citing to facts in the record"); *see also Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F.Supp.2d 1023, 1039 (C.D.

Cal. 2013) (distinguishing between "expert opinion" and inadmissible factual summaries and noting the expert "lack[ed] personal knowledge for most of the facts in his report and therefore could not testify to them to prove the truth of the matter").

Accordingly Plaintiffs' Opposition misrepresents the facts of the subject incident and provides no corroborating, credible evidence to support their assertions that there are facts and circumstances in dispute as to the incident.  Under the undisputed facts, Defendants are entitled to summary judgment on each of Plaintiffs' claims.

## III.   PLAINTIFFS HAVE FAILED TO ADDRESS ALL ARGUMENTS PUT FORWARD IN DEFENDANTS' MOTION

"In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Sportscare of America, P.C. v. Multiplan, Inc.*, 2011 U.S. Dist. LEXIS 14253, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011); a*ccord Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment).

Here, Plaintiffs' Opposition fails to address the arguments in Defendants' Motion for Summary Judgment regarding Plaintiffs' Second Claim for Denial of Medical Care, and Fourth and Fifth Claims for Municipal Liability.  [*See generally*, Opposition.]   Therefore, these claims should be dismissed with prejudice for Plaintiffs' failure to respond in the Opposition.[2]

## IV.   PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN OF ESTABLISHING ANY VIABLE CLAIM

### A.   Defendant Deputies Used Objectively Reasonable Force As the Evidence Confirms that Perez Posed an Immediate Threat.

---

[2] Plaintiffs' Separate Statement of Genuine Disputes of Material Fact and Additional Material Facts and Conclusions of Law state that Plaintiffs' dismiss their second, forth, and fifth, causes of action. [*See* Doc. 46.]

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

1    Plaintiffs' Opposition asserts that, along with other factors, summary judgment
2    should be denied because that Perez did not pose an immediate threat to the deputies
3    or others at the time of the shooting, that Perez had not committed any crime, but may
4    have been experiencing a mental health crisis, and that Perez was not actively resisting
5    arrest.   [*See generally,* Opposition at 14:19-27, 15:5-15, 16:16-21.]   However,
6    contrary to Plaintiffs' assertions, the uncontroverted evidence shows that Perez posed
7    an immediate threat to the safety of the deputies and others.

8    First, the SED Team arrived at the incident location where patrol deputies were
9    negotiating with Perez ***after he threatened a female with a firearm, was armed with***
10   ***a gun, and refusing commands while barricaded in the garage of a multi-unit***
11   ***complex where he did not live.***   [DUF 1-11.]   Further, there can be no dispute that
12   Perez was ***holding a gun in his hand for hours*** while he sat on a chair in the garage
13   and deputies attempted to negotiate a peaceful surrender with him, violating Cal.
14   Penal Code § 417(a).   [DUF 4, 6, 7, 10, 11, 23, 25.]

15   Importantly, after Negotiator Alcala was able to convince Perez to put the gun
16   down and walk towards the deputies in order to be taken into custody, Perez's entire
17   demeanor changed, and the deputies believed that Perez was no longer cooperating.
18   [DUF 8, 25-29.]   Then, as Perez stood approximately eight feet north of the garage
19   opening and approximately eight feet away from the gun's location, ***Perez put his***
20   ***hands up and shook his head back and forth, with an irritated and frustrated look,***
21   ***without making eye contact with anyone and suddenly turned slightly east, stepping***
22   ***back with his left foot, and pivoting on his right foot***.   [DUF 30, 31.]

23   Although the deputies deployed three (3) less-lethal rounds, the rounds were
24   ineffective in gaining Perez's compliance, and instead ***Perez accelerated and ran***
25   ***toward where the gun was located at the back of the pool table.***   [DUF 32-34.]

26   In response, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and
27   Deputy Moore each fired lethal rounds at Perez in order ***to stop the immediate threat***
28   ***they perceived from Perez's actions***.   [DUF 35.]   The deputies fired at ***Perez as he***

*ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table within arms' reach of where the gun was located on the floor.* The deputies reasonably believed that Perez was trying to get the gun to shoot someone. [DUF 36.] Importantly, the gun was found *under Perez's stomach where his hands were also located*. [DUF 40, 41.]

Accordingly, there can be no dispute that Perez posed an *immediate threat to the safety* of the Defendant Deputies and the others in the vicinity. [DUF 1-38.] All personnel surrounding the garage at the time of the use of force, despite their differing perspectives and vantage points, including those not parties to this action, observed in unison the same actions of Perez that posed an immediate threat, specifically that Perez stopped complying with commands, moved quickly toward the back of the pool table where the gun was located, and lowered his body in the direction of the gun, which was later located underneath his body. [DUF 29-37, 40-41.]

Lastly, Plaintiffs rely on Scott DeFoe's declaration to state that "the deputies could not shoot Perez under the fleeing felon theory under this set of facts." [Opposition at 17:15-16.] However, Defendants do not rely on this theory to establish that Defendant Deputies' use of force was justified in response to the immediate deadly threat from Perez's actions. Rather, leading case law establishes, where the uncontroverted objective evidence supports an officer's *reasonable belief* that the suspect posed an immediate risk of death or serious bodily injury to the officer or others, the officer is entitled to summary judgment because his responding use of force is deemed reasonable as a matter of law. *See, e.g., Labensky v. Cornwell*, 763 F. Supp. 2d 921, 922-25, 929 (S.D. Ohio 2010) ("To use force, actual danger need not threaten the officer or other officers; an officer need only have a reasonable perception of danger." Thus, "[a]n officer need not see a weapon to presume that a suspect may be reaching for or attempting to use a weapon.")

Accordingly, Defendant Deputies' use of force was justified in response to the immediate deadly threat from Perez's actions.

**B. Defendant Deputies are Entitled to Qualified Immunity.**

Plaintiffs' Opposition asserts that "disputed issues of material fact preclude granting qualified immunity." [Opposition at 17:23-25.] However, as discussed above, Plaintiffs' Opposition patently misrepresents the facts surrounding the subject incident and fails to provide corroborating evidence to support their version of the event.

Further, Plaintiffs' Opposition asserts that "at the time of the shooting it was clearly established that shooting Perez . . . violated Perez's constitutional right to be free from excessive force." [Opposition at 18:17-19.] However, Plaintiffs' Opposition fails to establish Defendant Deputies' conduct violated any clearly established law. *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) (The burden is on Plaintiffs to establish that the rights in question was clearly established at the time of this incident.)

Plaintiffs' Opposition relies on case law that discusses a scenario where within four minutes of their arrival, officers had shot decedent with a "less-lethal" beanbag shotgun, and had fatally shot him eight times with their service weapons. *See Glenn v. Washington Cnty.,* 673 F.3d 864, 866 (9th Cir. 2011). Further, the *Glenn* Court found that there was "material questions of fact . . . that preclude a conclusion that the . . . deadly force was reasonable as a matter of law." *Id*. at 879. However, ***those are not the facts in this case***; here, after ***many hours*** of negotiating, Perez escalated the situation by ***stepping back and then accelerating and reaching for where the gun was located***. [DUF 26-31, 34-37.] Specifically, based on the totality of the circumstances and because the situation was very dynamic, uncertain, and rapidly-evolving, ***the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun***. [DUF 37, 45.]

Further, this is not a case where there is a material question of fact, as Plaintiffs' Opposition misrepresents the facts of the subject incident and provides zero corroborating, credible evidence to support their assertions that there are facts and

1  circumstances in dispute as to the incident.

2  Therefore, Plaintiffs point to no prior precedent or case law with facts

3  *specifically and substantially identical* to the facts of the incident at issue which

4  would have put Defendant Deputies on notice that their conduct was unconstitutional.

5  *White v. Pauly*, 580 U.S. 73, 79 (2017) ("clearly established law" should not be

6  defined "at a high level of generality" but must be "particularized" to the facts of the

7  case); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1152-54 (2018). Rather, at the time

8  of the incident, it was clearly established that the use of deadly force is reasonable if

9  a suspect "poses a significant threat of death or serious physical injury to the officer

10 or others." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014).

11 **C.    There Is No Evidence that Defendant Deputies' Conduct "Shocks**

12 **the Conscience."**

13 As an initial matter, Defendant Deputies are entitled to judgment on Plaintiffs'

14 Interference with Familial Relationship claim, because under the uncontroverted

15 evidence, Defendant Deputies used only objectively reasonable force during the

16 incident. *See Corales v. Bennett,* 567 F.3d 554, 569 n. 11 (9th Cir.2009) (If the court

17 finds that "no underlying dependent constitutional deprivation" was demonstrated,

18 the family relations substantive due process claim also must fail.).

19 Further, there is no evidence that Defendant Deputies acted with a purpose to

20 harm unrelated to legitimate law enforcement objectives, such that their conduct

21 "*shocks the conscience*." Rather, the uncontroverted evidence shows that Defendant

22 Deputies, after significant crisis negotiation efforts, were forced ?.to make a *snap*

23 *decision* to stop Perez from getting the gun and shooting someone, as the less-lethal

24 deployments were ineffective in gaining Perez's compliance, and instead Perez

25 accelerated and reached toward the location of the gun. [DUF 29-37.] Accordingly,

26 actual deliberation was not practical or feasible under the circumstances, as the

27 situation was very dynamic, uncertain, and rapidly-evolving. [DUF 45.]

28

**MANNING | KASS**

9

**D.     Plaintiffs' State Law Claims Fail.**

As outlined above, Defendant Deputies' use of force was objectively reasonable under *Graham*, thus Defendant Deputies and the County are entitled to judgment on plaintiffs' redundant state law claims for battery, negligence, and violation of the Bane Act. *See Archibald v. Cty. of San Bernardino*, 2018 U.S. Dist. LEXIS 171243, at *22 (C.D. Cal. Oct. 2, 2018) (acknowledging that battery, negligence, and Bane Act claims are governed by the same inquiry that governs excessive force claims); *see also Strong v. State*, 201 Cal. App. 4th 1439, 1448 (2011) (Pursuant to Government Code § 815.2, "[A] public entity's liability hinges on the liability of its employee").

**1.     Pre Force Negligence Claim**

California negligence law not only encompasses the immediate events around the use of force, but also "an officer's pre-shooting decisions can make his later use of force unreasonable under the totality of the circumstances." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1128 (9th Cir. 2021).  However, in *Hayes v. County of San Diego*, 57 Cal.4th 622, 631 (2013), the court found that although the plaintiff relied on multiple negligence theories, she had only one indivisible cause of action for the single injury – the loss of her father.  Thus, absent a separate injury from preshooting conduct, a court has no occasion to address whether law enforcement personnel owe an independent duty of care with respect to their preshooting conduct. *Id.*  Accordingly, "the reasonableness of the officers' preshooting conduct should not be considered in isolation," but "should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable." *Id.* at 632.

Here, as an initial matter, plaintiffs do not allege a ***separate injury from preshooting conduct*** that could give rise to a separate negligence claim – only different theories to recover for the same injury.  Accordingly, the preshooting conduct should be considered ***only as part of*** the totality of the circumstances regarding the deputies' ultimate use of force.  "Because plaintiff did not allege a

separate preshooting injury, this case does not raise the question of what independent duty, if any, law enforcement personnel owe with regard to their preshooting conduct." *Id.* at 631.

Further, as the uncontroverted evidence shows, Defendant Deputies' use of force was justified in response to the immediate deadly threat from Perez's behavior, and, as such, Defendant Deputies' use of force was objectively reasonable under *Graham*. [DUF 26-31, 34-37.]  More specifically, based on the totality of the circumstances – including Perez's overt decision to abruptly step back, turn around, and run toward the gun while lowering his body with his arms outstretched, the deputies had no cause to believe that Perez was running back into the garage for any other reason than to get back to the gun and shoot them.  [DUF 37, 45.]

Accordingly, Defendant Deputies' use of force was objectively reasonable, thus there can be no liability for conduct preceding the use of force.

### 2. Violation of the Bane Act

Plaintiffs' Opposition asserts that "the deputies acted with a reckless disregard for Perez's constitutional right to be free from excessive force." [Opposition at 26:15-16.]  However, the uncontroverted evidence shows that after many hours of negotiating, Perez finally complied with commands to put the gun down and then to stand up and walk towards the deputies in order to end the situation peacefully, Perez chose to escalate the situation by stepping back and then accelerating and reaching for where the gun was located.  [DUF 26-31, 34-37.]  Specifically, based on the totality of the circumstances, including Perez's abrupt, objective behavior, the deputies had a reasonable belief that Perez was running back into the garage, while lowering his body with his arms outstretched in order to grab the gun.  [DUF 36, 37.]  Accordingly, there is no evidence that Deputy Defendants specifically intended to deprive Perez of his constitutional rights.

### E.   Plaintiffs' are Not Entitled to Punitive Damages.

Plaintiffs' Opposition states "[b]ecause there are disputed issues of fact bearing

---

11

MK MANNING | KASS

1  on whether the use of lethal force against Perez constituted excessive force in
2  violation of the Fourth Amendment and state law, there is a question of fact whether
3  the officers' shooting of Perez was motivated by evil or was in reckless or callous
4  indifference to his constitutional rights." [Opposition at 26:26-27:4.] However, in
5  order to obtain punitive damages, Plaintiffs must prove that Deputy Defendants'
6  actions *were malicious, oppressive, or in reckless disregard of Perez's rights*. *Dang
7  v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005); *see also* 9th Cir. Model Jury Instruction
8  5.5 (2018).

9       However, Plaintiff's Opposition fails to provide any admissible evidence that
10 Deputy Defendants acted with malice, oppression, or reckless disregard toward Perez.
11 Rather, the undisputed evidence shows that after many hours of negotiating, Perez
12 complied with commands to put the gun down, stand up, and walk towards the
13 deputies in order to end the situation peacefully. However, Perez then escalated the
14 incident by stepping back and then accelerating and reaching for where the gun was
15 located. [DUF 26-31, 34-37.] Specifically, based on the totality of the circumstances
16 and because the situation was very dynamic, uncertain, and rapidly-evolving, the
17 deputies had no reason to believe that Perez was running back into the garage for any
18 other reason than to get back to the gun. [DUF 37, 45.] As such, Defendant Deputies
19 are entitled to the dismissal of Plaintiffs' punitive damages claim.

20 **V.    CONCLUSION**

21      In light of all of the foregoing, Defendants request that their motion for
22 summary judgment be granted in its entirety.

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1  DATED:  March 22, 2024

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:      /s/ Kayleigh A. Andersen
          Eugene P. Ramirez, Esq.
          Lynn Carpenter, Esq.
          Kayleigh A. Andersen, Esq.
          Attorneys for Defendants, COUNTY OF
          SAN BERNARDINO; CORY
          MCCARTHY, ANDREW POLLICK;
          DAVID MOORE, and CRISTINA
          OLIVAS

MANNING | KASS

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**

1

## <u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

4

5

On March 22, 2024, I served true copies of the following document(s) described as **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

6

7

8

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq.
Shannon Leap, Esq.
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333
Fax: (818) 347-4118
Email:  dalekgalipo@yahoo.com;
sleap@galipolaw.com;
slaurel@galipolaw.com

9

10

11

12

13

*ATTORNEYS FOR PLAINTIFFS, A.J.P., AND A.M.P.. ET AL.*

14

15

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

16

17

18

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

20

Executed on March 22, 2024, at Los Angeles, California.

21

22

*Maria T. Castro*

23

_____
Maria T. Castro

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT**