Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Lynn Carpenter (State Bar No. 310011)
  *lynn.carpenter@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO; CORY MCCARTHY, ANDREW POLLICK; DAVID MOORE, and CRISTINA OLIVAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| A.J.P. and A.M.P., minors by and through their guardian ad litem Cynthia Nunez, individually and as successor in interest to Albert Perez, deceased; and PATRICIA RUIZ, individually, | Case No. 5:22-CV-01291 SSS (SHKx) |
| | *[Honorable Sunshine Suzanne Sykes, Magistrate Judge, Shashi H. Kewalramani]* |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS** |
| COUNTY OF SAN BERNARDINO; and DOES 1-10, Inclusive, | |
| Defendant. | *Filed concurrently with Reply in Support of Defendants' Motion For Summary Judgment; Evidentiary Objections to Plaintiffs' Evidence; and Defendants' Response to Plaintiffs' Evidentiary Objections* |
| | Date: April 19, 2024
Time: 2:00 p.m.
Crtrm.: Courtroom 2, 2nd Floor |
| | *Action Filed:      07/22/2022* |

1

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

**TO THIS HONORABLE COURT AND THE PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

In accordance with C.D L.R. 56-3 and this Court's Standing Order, defendants COUNTY OF SAN BERNARDINO ("County"); CORY MCCARTHY ("Corporal McCarthy"), ANDREW POLLICK ("Corporal Pollick"); DAVID MOORE ("Deputy Moore"), and CRISTINA OLIVAS ("Corporal Olivas") ("Defendnat Deputies" and collectively "Defendants") submit this Response to Plaintiffs' Separate Statement of Genuine Disputes of Material Fact and Additional Material Facts [Doc. 46].

| DEFENDANTS' FACTS AND SUPPORTING EVIDENCE [DUF]: | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE: |
|---|---|
| 1. On Sunday, August 29, 2021, at approximately 1726 hours, San Bernardino County Sheriffs' Dispatch received a 911 call for service at 16576 Zenda Street #1, Victorville.<br><br>Call Log History (Ex. "A") at pg. 1. | Undisputed. |
| 2. The reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket. Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3. | Undisputed. |
| 3. Helen Fregoso's daughter, Renee Caudillo, advised Sheriffs Dispatch that Perez told her that she was causing him problems and thought people were after him, and that he pulled out a black gun from his pocket. Call Log History (Ex. "A") at pg. 1. | Undisputed. |

2

| | |
|---|---|
| 4. Deputy Steven Carter was the first to arrive at the incident location, and located Perez in the garage and observed a black gun in Perez' hand.<br><br>Call Log History (Ex. "A") at pg. 2. | Undisputed. |
| 5. Deputy Steven Carter ordered Perez to drop the gun, but Perez did not comply.<br><br>Call Log History (Ex. "A") at pg. 2. | Undisputed. |
| 6. Perez remained in the garage with the gun in his hand and refusing commands from deputies to drop the gun.<br>Call Log History (Ex. "A") at pgs. 2, 3, 4 | Undisputed. |
| 7. At approximately 1900 hours, Sergeant Luke Gaytan ("Sergeant Gaytan") requested via text message that all members of the San Bernardino County Sheriff's Department Specialized Enforcement Division Team 1 ("SED Team") respond to Zenda Street in Victorville for a barricade situation where the subject had threatened a female with a firearm, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live.<br><br>Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. | Objection: Compound.<br><br>Disputed on the grounds that the deputies had no specific information that the subject had threatened a female with a firearm.<br><br>Perez never verbally threatened to injure anyone.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-24; Deposition of Anthony Alcala ("Alcala Depo.") attached as "Exhibit 7" to Leap Decl., at 20:22-25, Deposition of Helen Fregoso ("Fregoso Depo.") attached as "Exhibit 8" to Leap Decl. at 46:19-50:5. |

3

MK MANNING | KASS

| | |
|---|---|
| 7. Moving Party's Response:<br><br>Contrary to Plaintiffs' assertion, Corporal Pollick testified that he did himself did not hear Perez threaten anyone, but that information was relayed to him when the initial call for service was entered.  Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-24.  Further, Negotiator Alcala testified that he did not have any information that anyone had been physically injured, not that Perez did not threaten anyone.  Ex. 7 to Leap Depo. ("Alcala Depo.") at 20:22-25.  Lastly, Helen Fregoso stated that she did not hear Perez threaten to harm anyone and that he did not threaten to harm her.  Ex. 8 to Leap Depo. ("Fregoso Depo.") at 46:19-50:5.<br><br>Accordingly, Plaintiffs do not present any evidence to dispute that the SED Team was told that the subject had threatened a female with a firearm.  Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion. | |
| 8.  Sergeant Gaytan also notified the SED Team that a crisis negotiator, Negotiator Anthony Alcala, was also responding to the incident location.<br><br>Gaytan Decl., ¶ 3; McCarthy Decl., ¶ 3; Olivas Decl., ¶ 3; Pollick Decl., ¶ 3; Moore Decl., ¶ 3; Stone Decl., ¶ 3. | Undisputed. |
| 9.  Sergeant Gaytan had all members of the SED Team, which included Sergeant Gaytan, Corporal Andrew Pollick, Deputy Josh Stone, Deputy David Moore, Corporal Cristina Olivas, Corporal Cory McCarthy, and Corporal Greg Gary, meet at the Victorville Library just west of the incident location for a briefing prior to arriving at the subject location.<br><br>Gaytan Decl., ¶ 4; McCarthy Decl., ¶ 4; Olivas Decl., ¶ 4; Pollick Decl., ¶ | Undisputed. |

4

| | |
|---|---|
| 4; Moore Decl., ¶ 4; Stone Decl., ¶ 4; Pollick Depo. (Ex. "C") at 5:25-6:4; McCarthy Depo. (Ex. "D") at 22:6-13. | |
| 10. During this briefing, the SED Team learned that patrol deputies from the Victorville Sheriff's Station were negotiating with the suspect, Perez, who was seated on a stool at the rear of the garage behind a pool table and was in possession of a gun.<br><br>Gaytan Decl., ¶ 5; McCarthy Decl., ¶ 5; Olivas Decl., ¶ 5; Pollick Decl., ¶5; Moore Decl., ¶ 5; Stone Decl., ¶ 5; McCarthy Depo. (Ex. "D") at 23:5-13; Perez Photos (Ex. "K"). | Undisputed. |
| 11. The SED Team also learned that the door from the garage to the home had been locked by the homeowner, and that both sides of the garage were contained by patrol units and they were trying to de-escalate the situation by attempting to convince him to surrender peacefully, but he refused to put the gun down.<br><br>Gaytan Decl., ¶ 6; McCarthy Decl., ¶ 6; Olivas Decl., ¶ 6; Pollick Decl., ¶ 6; Moore Decl., ¶ 6; Stone Decl., ¶ 6. | Objection: Vague as to time.<br><br>Disputed on the grounds that Mr. Perez eventually put the gun down in response to commands. |
| 11. Moving Party's Response:<br><br>Plaintiffs' dispute is not to the fact presented, and Plaintiffs have not presented any evidence that prior to the SED Team's arrival Perez refused to put the gun down, thus there is not dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion. | |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

MANNING | KASS

| | |
|---|---|
| 12. During this briefing, the SED Team also developed an operational plan, which included medical plans, gas plans, and less lethal plans, before going to the incident location.<br><br>Gaytan Decl., ¶ 7; McCarthy Decl., ¶ 7; Olivas Decl., ¶ 7; Pollick Decl., ¶ 7; Moore Decl., ¶ 7; Stone Decl., ¶ 7; Pollick Depo. (Ex. "C") at Pollick Depo. (Ex. "C") at 5:25-6:4, 22-24. | Undisputed. |
| 13. The SED Team's medical plan included requesting Victorville Fire Department, American Medical Response, and air rescue, the sheriff's helicopter, to be on standby in the event that there was a medical emergency, the BearCat and Corporal Olivas' vehicle were also set up as medical extract vehicles.<br><br>Gaytan Decl., ¶ 8; McCarthy Decl., ¶ 8; Olivas Decl., ¶ 8; Pollick Decl., ¶ 8; Moore Decl., ¶ 8; Stone Decl., ¶ 8; McCarthy Depo. (Ex. "D") at 26:14-24. | Undisputed. |
| 14. The SED Team's gas plans included Corporal Pollick and Deputy Moore having chemical agents should the need and opportunity to use them arise, and Corporal Pollick developed a chemical agent plan for the house. The SED Team developed numerous less lethal plans to be used at the appropriate point if the opportunity presented itself. | Undisputed. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| Gaytan Decl., ¶ 9; McCarthy Decl., ¶ 9; Olivas Decl., ¶ 9; Pollick Decl., ¶ 9; Moore Decl., ¶ 9; Stone Decl., ¶ 9; Pollick Depo. (Ex. "C") at 7:8-12. | |
| 15. The SED Team's operational plan included containing both sides of the garage, with Corporal McCarthy, Corporal Olivas and Deputy Stone to be positioned on the southeast corner of the garage, with Corporal Olivas with a shield and her pistol, Corporal McCarthy behind Corporal Olivas with lethal cover, and Deputy Stone with a less lethal 40 mm multi-launcher. On the other side, Deputy Moore, Corporal Pollick, and Sergeant Gaytan were to be positioned on the southwest corner of the garage, with Deputy Moore with a shield and his pistol, Corporal Pollick behind Deputy Moore with lethal cover, and Sergeant Gaytan with a less lethal 40 mm single-launcher.<br><br>Gaytan Decl., ¶ 10; McCarthy Decl., ¶ 10; Olivas Decl., ¶ 10; Pollick Decl., ¶ 10; Moore Decl., ¶ 10; Stone Decl., ¶ 10. | Undisputed. |
| 16. Additionally, the SED Team was going to position the BearCat, which is an armored rescue vehicle, in the driveway and face it towards the garage to light up the garage because it was dark outside.<br><br>Gaytan Decl., ¶ 11; McCarthy Decl., | Undisputed. |

7

| | |
|---|---|
| ¶ 11; Olivas Decl., ¶ 11; Pollick Decl., ¶ 11; Moore Decl., ¶ 11; Stone Decl., ¶ 11; McCarthy Depo. (Ex. "D") at 26:3-7; Moore Depo. (Ex. "E") at 19:10-18. | |
| 17. Sergeant Gaytan made it clear to the SED Team that if the suspect was to separate himself from the firearm, the team could not allow him to gain access back to that firearm because we did not want him to be able to shoot at us or any members of the public. <br><br> Gaytan Decl., ¶ 12; McCarthy Decl., ¶ 12; Olivas Decl., ¶ 12; Pollick Decl., ¶ 12; Moore Decl., ¶ 12; Stone Decl., ¶ 12; Pollick Depo. (Ex. "C") at 6:25-7:7; McCarthy Depo. (Ex. "D") at 45:19-46:2, 76:2-8; Moore Depo. (Ex. "E") at 29:15-30:1; Olivas Depo. (Ex. "F") at 20:18-21:2; Stone Depo. (Ex. "G") at 28:19-29:8. | Disputed on the grounds that it was unreasonable for the deputies to believe that Mr. Perez would fire any shots with the gun if he were to retrieve the gun after putting it on the ground in compliance with the deputies' commands. <br><br> Mr. Perez never pointed the firearm at anyone, including the reporting party. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:1967:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22' Ex. 1 to Leap Decl. ("Moore Depo.") at 66:20-24); Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:19-50:5. <br><br> Mr. Perez never fired any shots from the gun. Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:1917:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14. |

8

| | |
|---|---|
| | When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun. |
| | Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:413; 32:7-23. |

**17. Moving Party's Response:**

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Plaintiffs' do not present any evidence to dispute that the SED Team was told by Sergeant Gaytan **_prior to their arrival_** that if the suspect was to separate himself from the firearm, the team could not allow him to gain access back to that firearm because we did not want him to be able to shoot at us or any members of the public. Therefore, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 18. Additionally, during the briefing, the SED Team learned that there was a family who stayed in their home in the northwest corner of the multi-unit complex.<br><br>Gaytan Decl., ¶ 13; McCarthy Decl., ¶ 13; Olivas Decl., ¶ 13; Moore Decl., ¶ 13; Stone Decl., ¶ 13. | Objection: relevance.<br><br>The deputies had the garage contained. (Def. SUF 15).<br><br>Otherwise, undisputed. |

**18. Moving Party's Response:**

Contrary to Plaintiffs' assertion, it is **_relevant_** that there was a family who stayed

9

in their home in the northwest corner of the multi-unit complex, as Perez not only posed an immediate threat to Defendant Deputies, other deputies on the scene, but the public as well.  (*See* Doc. 43 at 17:20-20:2.)  Further, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 19. The SED Team made contact with the family, and the family decided to stay in the home as there was an elderly female at the home who was not easily mobile, and the SED Team advised the family to shelter in place.<br><br>Gaytan Decl., ¶ 13; McCarthy Decl., ¶ 13; Olivas Decl., ¶ 13; Pollick Decl., ¶ 13; Moore Decl., ¶ 13; Stone Decl., ¶ 13. | Objection: relevance.<br><br>The deputies had the garage contained. (Def. SUF 15).<br><br>Otherwise, undisputed. |

19. Moving Party's Response:

Contrary to Plaintiffs' assertion, it is relevant that there was a family who stayed in their home in the northwest corner of the multi-unit complex, as Perez not only posed an immediate threat to Defendant Deputies, other deputies on the scene, but the public as well.  (*See* Doc. 43 at 17:20-20:2.) Further, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 20. The SED Team arrived to the incident location with the BearCat and met with the patrol sergeant to gain additional information.<br><br>Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶14. | Undisputed. |
| 21. The SED Team learned that Perez was kind of nodding off, he was kind | Disputed on the grounds that at the time of the shooting, the Deputies had |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| of lucid, and that it was unclear if he was under the influence of any narcotics or alcohol.<br><br>Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶ 14. | no information that Mr. Perez was under the influence of any illegal substances.<br><br>Deposition of Cory McCarthy ("McCarthy Depo.") attached to Leap Decl. as "Exhibit 4," at 25:13-18; Ex. 1 to Leap Decl. ("Moore Depo.") at 13:8-14; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:16-21. |
| 21. Moving Party's Response:<br><br>Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.  Plaintiffs' do not present any evidence to dispute that it was unclear if he was under the influence of any narcotics or alcohol.  Further, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion. | |
| 22. Due to the patrol deputies being fatigued after hours of attempted negotiations and attempts to gain compliance from Perez, the SED Team took over and took their assigned positions on the corners of the garage as was discussed in briefing.<br><br>Gaytan Decl., ¶ 15; McCarthy Decl., ¶ 16; Olivas Decl., ¶ 16; Pollick Decl., ¶ 16; Moore Decl., ¶ 16; Stone Decl., ¶ 15. | Undisputed. |
| 23. Perez remained seated directly behind the pool table, approximately 16 feet away from the garage opening, with the gun in his right hand, and looking back and forth | Undisputed. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

MANNING | KASS

| | |
|---|---|
| between the members of the SED team on each side of the garage.<br><br>McCarthy Depo. (Ex. "D") at 26:25-27:3, 28:3-7, 30:6-14; Moore Depo. (Ex. "E") at 10:21-23, 22:11-14, 18-19, 23-24; Olivas Depo. (Ex. "F") at 10:20-11:6: Alcala Depo. (Ex. "H") at 25:6-19; Gaytan Depo. (Ex. "I") at 11:22-25; Perez Photos (Ex. "K"); Garage Photos (Ex. "L"). | |
| 24. Before the lethal force encounter, Corporal McCarthy changed positions from the side of the garage to the BearCat in the driveway so that he could have a different vantage point to see Perez in the garage.<br><br>McCarthy Decl., ¶ 16. | Undisputed. |
| 25. During the incident, Negotiator Alcala was the assigned crisis negotiator and attempted numerous times to negotiate with Perez and gain his compliance.<br><br>Gaytan Decl., ¶ 16; McCarthy Decl., ¶ 17; Olivas Decl., ¶ 17; Pollick Decl., ¶ 17; Moore Decl., ¶ 17; Stone Decl., ¶ 16; McCarthy Depo. (Ex. "D") at 27:9-22, 28:8-14; Gaytan Depo. (Ex. "I") at 17:12-15; Incident Audio (Ex. "J"). | Undisputed. |
| 26. During the negotiation, Negotiator Alcala was able to convince Perez to put the gun down. Perez put the gun by the stool behind the pool table, and the deputies viewed this as an act | Undisputed. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| of compliance.<br><br>Pollick Depo. (Ex. "C") at 12:9-14, 18:19-19:1; McCarthy Depo. (Ex. "D") at 39:3-13, 67:8-12; Moore Depo. (Ex. "E") at 11:3-15, 12:23-25; Olivas Depo. (Ex. "F") at 13:7-14; Stone Depo. (Ex. "G") at 20:22-21:14, 30:22-24, 48:10-15; Alcala Depo. (Ex. "H") at 32:24-33:9, 34:13-35:11; Incident Audio (Ex. "J") at 25:00-27:00. | |
| 27. Then, Negotiator Alcala encouraged Perez to stand up and walk towards the deputies, Perez complied and walked toward the front of the garage.<br><br>Pollick Depo. (Ex. "C") at 13:2-6, 19:17-21; McCarthy Depo. (Ex. "D") at 41:13-14, 67:13-16; Olivas Depo. (Ex. "F") at 13:15-20, 14:5-13; Moore Depo. 10:11-13, 11:24-12:10; Stone Depo. (Ex. "G") at 21:18-21, 25, 22:1-5, 48:10-23; Alcala Depo. (Ex. "H") at 35:12-20, 41:6-15; Incident Audio (Ex. "J") at 27:00-28:00. | Undisputed. |
| 28. As Perez started to move towards the front of the garage, where the SED Team was waiting, Sergeant Gaytan instructed Perez to stop so that the SED Team could safely take Perez into custody.<br><br>Gaytan Decl., ¶ 16; McCarthy Decl., ¶ 17; Olivas Decl., ¶ 17; Pollick | Undisputed. |

13

| | |
|---|---|
| Decl., ¶ 17; Moore Decl., ¶ 17; Stone Decl., ¶ 16; Stone Depo. (Ex. "G") at 22:6-8, 18-21, 26:19-21, 48:16-18; Alcala Depo. (Ex. "H") at 41:11-17, 47:20-24; Gaytan Depo. (Ex. "I") at 20:20-24; Incident Audio (Ex. "J") at 28:00-31:50. | |
| 29. Sergeant Gaytan communicated to Perez that the deputies were going to have to take him into custody, which appeared to the deputies to frustrate Perez, and lead the deputies to believe that Perez was no longer cooperating.<br><br>Moore Depo. (Ex. "E") at 21:22-22:1, 41:10-16; Olivas Depo. (Ex. "F") at 19:24-20:7, 49:3-25; Stone Depo. (Ex. "G") at 48:16-18; Gaytan Depo. (Ex. "I") at 40:5-13, 23-25, 41:1-19; Incident Audio (Ex. "J") at 28:00-31:50. | Objection: Calls for speculation as to Mr. Perez's state of mind.<br><br>Disputed that Mr. Perez was not cooperating.<br><br>Sergeant Gaytan instructed Mr. Perez to stop when Mr. Perez reached the southwest corner of the pool table, and Mr. Perez complied by stopping at the corner of the pool table. Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 47:11-15.<br><br>When Mr. Perez stopped at the end of the pool table, the deputies could see that his hands were visibly empty. Ex. 2 to Leap Decl. ("McCarthy Depo.") at 41:13-25. Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15.<br><br>Sergeant Gaytan then instructed Mr. Perez to turn around and get on his knees.<br>Belt Recording of Sergeant Luke |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Gaytan ("Incident Audio") attached to Declaration of Kayleigh Anderson ("Anderson Decl.") as Exhibit J at 30:29-30:59; Ex. 7 to Leap Decl. ("Alcala Depo.") at 52:9-14.<br><br>After Sergeant Gaytan instructed Mr. Perez to turn around and get on his knees, Mr. Perez took an approximately half-foot step back with his left foot and began to turn to his left.<br>Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. ("Pollick Depo.") at 20:19-24. |

29. Moving Party's Response:

Contrary to Plaintiffs' assertion, based on Perez' visible frustration regarding being taken into custody, ***the deputies believed*** that Perez was no longer cooperating.  Moore Depo. (Ex. "E") at 21:22-22:1, 41:10-16; Olivas Depo. (Ex. "F") at 19:24-20:7, 49:3-25; Stone Depo. (Ex. "G") at 48:16-18; Gaytan Depo. (Ex. "I") at 40:5-13, 23-25, 41:1-19.  Further, Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.  Lastly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 30. For a few minutes, while Sergeant Gaytan continued to talk to Perez to have him peacefully surrender, Perez stood parallel to the middle of the pool table, approximately eight feet north of the garage opening and approximately eight feet away from the gun's location, Perez then put his hands up and shook his head back and forth, with an irritated and | Objection: Calls for speculation as to Mr. Perez's state of mind.<br><br>Disputed that Mr. Perez was not cooperating.<br><br>Sergeant Gaytan instructed Mr. Perez to stop when Mr. Perez reached the southwest corner of the pool table, and Mr. Perez complied |

| | |
|---|---|
| frustrated look, without making eye contact with anyone.<br><br>Pollick Depo. (Ex. "C") at 13:7-19; McCarthy Depo. (Ex. "D") at 47:1-12, 53:3-7; Moore Depo. (Ex. "E") at 14:18-21, 21:22-22:1, 39:24-25, 40:1, 8-9, 24-25, 41:1-3, 10-16; Stone Depo. (Ex. "G") at 31:8-10; Gaytan Depo. (Ex. "I") at 31:5-14, 40:23-41:19; Incident Audio (Ex. "J") at 28:00-31:50; Garage Photos (Ex. "L"). | by stopping at the corner of the pool table.<br>Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 47:11-15.<br><br>When Mr. Perez stopped at the end of the pool table, the deputies could see that his hands were visibly empty. Ex. 2 to Leap Decl. ("McCarthy Depo.") at 41:13-25. Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15.<br><br>Sergeant Gaytan then instructed Mr. Perez to turn around and get on his knees.<br>Belt Recording of Sergeant Luke Gaytan ("Incident Audio") attached to Declaration of Kayleigh Anderson ("Anderson Decl.") as Exhibit J at 30:29-30:59; Ex. 7 to Leap Decl. ("Alcala Depo.") at 52:9-14.<br><br>After Sergeant Gaytan instructed Mr. Perez to turn around and get on his knees, Mr. Perez took an approximately half-foot step back with his left foot and began to turn to his left.<br>Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. |

16

MANNING | KASS

| | |
|---|---|
| | ("Pollick Depo.") at 20:19-24. |

30. Moving Party's Response:

Contrary to Plaintiffs' assertion, this fact does not speculate to Perez' state of mind, rather, the fact states that the **deputies watched Perez put his hands up and shook his head back and forth, with an irritated and frustrated look, without making eye contact with anyone.** *See* Moore Depo. (Ex. "E") at 41:10-16; Gaytan Depo. (Ex. "I") at 40:23-41:19. Further, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 31. Suddenly, Perez turned slightly east, stepping back with his left foot, and pivoting on his right foot.<br><br>Pollick Depo. (Ex. "C") at 20:25-21:8, 15-25, 22:1; McCarthy Depo. (Ex. "D") at 52:19-24, 67:17-19, 70:2-9; Moore Depo. (Ex. "E") at 36:12-14, 18-24, 41:10-22; Olivas Depo. (Ex. "F") at 20:3-7; Stone Depo. (Ex. "G") at 27:4-28:4, 46:11-18, 48:19-49:6; Alcala Depo. (Ex. "H") at 48:7-15; Gaytan Depo. (Ex. "I") at 32:18-33:4, 40:5-13; Incident Audio (Ex. "J") at 28:00-31:50. | Disputed that Perez made this move "suddenly" as opposed to in compliance with commands.<br><br>Sergeant Gaytan instructed Mr. Perez to stop when Mr. Perez reached the southwest corner of the pool table, and Mr. Perez complied by stopping at the corner of the pool table. Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 47:11-15.<br><br>When Mr. Perez stopped at the end of the pool table, the deputies could see that his hands were visibly empty. Ex. 2 to Leap Decl. ("McCarthy Depo.") at 41:13-25. Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15.<br><br>Sergeant Gaytan then instructed Mr. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Perez to turn around and get on his knees. Belt Recording of Sergeant Luke Gaytan ("Incident Audio") attached to Declaration of Kayleigh Anderson ("Anderson Decl.") as Exhibit J at 30:29-30:59; Ex. 7 to Leap Decl. ("Alcala Depo.") at 52:9-14.<br><br>After Sergeant Gaytan instructed Mr. Perez to turn around and get on his knees, Mr. Perez took an approximately half-foot step back with his left foot and began to turn to his left. Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. ("Pollick Depo.") at 20:19-24. |

31. Moving Party's Response:

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Plaintiffs' do not present any evidence to dispute that Perez turned slightly east, stepping back with his left foot, and pivoting on his right foot. Further, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 32.As soon as Perez stepped back, Deputy Stone deployed a less-lethal 40-millimeter round, as was discussed in the SED Teams planning briefing, which hit Perez somewhere between his waist and the top of his shoulders.<br><br>Pollick Depo. (Ex. "C") at 20:25- | Disputed that the less-lethal deployment was reasonable.<br><br>After Sergeant Gaytan instructed Mr. Perez to turn around and get on his knees, Mr. Perez took an approximately half-foot step back with his left foot and began to turn to his left. |

18

MANNING | KASS

| | |
|---|---|
| 21:8; McCarthy Depo. (Ex. "D") at 52:25-53:12, 70:2-9; Moore Depo. (Ex. "E") at 34:23-35:17, 36:8-14, 41:20-22, 54:10-15; Olivas Depo. (Ex. "F") at 21:16-22:9, 50:1-3; Stone Depo. (Ex. "G") at 27:4-28:4, 8-25, 29:1-8, 12-17, 46:11-18, 48:19-49:6; Gaytan Depo. (Ex. "I") at 28:18-29:9; Incident Audio (Ex. "J") at 31:49-31:57. | Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. ("Pollick Depo.") at 20:19-24.<br><br>Mr. Perez was not advancing or charging at any person, including any deputies when Deputy Stone and Sergeant Gaytan fired their BIP rounds. Ex. 3 to Leap Decl. ("Olivas Depo.") at 22:21-23; Ex. 5 ("Stone Depo") at 26:22-11).<br><br>Deputy Stone and Sergeant Gaytan observed that Mr. Perez's hands were empty at the time they deployed their BIP rounds. Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15.<br><br>At the time of the second BIP round, Mr. Perez was moving away from the first BIP round and away from the deputies. Ex. J to Anderson Decl. ("Incident Audio") at 30:25-31:05; Ex. 3 to Leap Decl. ("Olivas Depo.) at Ex. 7 to Leap Decl. ("Alcala Depo.") at 52:9-14; Ex. 5 to Leap Decl. ("Stone Depo.) at 31:25-33:10.<br><br>Mr. Perez was approximately 6-8 feet from the firearm at the time he was struck by the first BIP round. Ex. 5 to Leap Decl. ("Stone Depo.") at 31:6-10. |

19

MANNING | KASS

| | |
|---|---|
| | Based on police training, a BIP round can cause injury. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 17:15-21. |
| | No deputy issued a verbal warning to Mr. Perez that they would deploy less lethal munitions against him prior to deploying less lethal munitions. Ex. 5 to Leap Decl. ("Stone Depo.") at 38:5-7; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 36:19-21; Ex. J to Anderson Decl. ("Incident Audio") at 31:30-31:51. |
| | Mr. Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25. |
| | Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |

32. Moving Party's Response:

The evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| 33. Sergeant Gaytan and Deputy Stone each deployed another less-lethal round at Perez, which also appeared to strike Perez at center mass. However, the less-lethal rounds appeared to be ineffective in gaining Perez' compliance.<br><br>Pollick Depo. (Ex. "C") at 23:17-25:10; McCarthy Depo. (Ex. "D") at 56:22-57:3, 67:24-68:2; Moore Depo. (Ex. "E") at 34:23-35:17, 54:10-15; Olivas Depo. (Ex. "F") at 22:10-19; Alcala Depo. (Ex. "H") at 49:17-20; Gaytan Depo. (Ex. "I") at 34:9-18; Incident Audio (Ex. "J") at 31:49-31:57. | Disputed that the less-lethal rounds were ineffective.<br><br>Mr. Perez was struck by two or three 40 millimeter "BIP" rounds within a 12 second timeframe.<br>Ex. J to Anderson Decl. ("Incident Audio") at 31:39-31:50.<br><br>Mr. Perez flinched in reaction to being struck by the BIP rounds.<br>Ex. 2 to Leap Decl. ("McCarthy Depo.") at 22:19-23:3; Ex. 3 to Leap Decl. ("Olivas Depo.") at 22:6-9; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 55:17-23.<br><br>Mr. Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.<br><br>Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |

33. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state that Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs

21

present additional unrelated and unsupported facts to manufacture a dispute of
fact.  Importantly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See*
Defendants' Evidentiary Objections.

Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not
create a dispute of fact.  Thus, this fact is undisputed for the purpose of this
Motion.

| | |
|---|---|
| 34. Although it appeared to the deputies that Perez was hit with three (3) less-lethal rounds, he accelerated and ran toward where the gun was located at the back of the pool table.<br><br>Pollick Depo. (Ex. "C") at 23:12-17, 27:23-28:4, 30:17-18, 22-25, 41:16-20, 42:6-11; McCarthy Depo. (Ex. "D") at 65:19-24, 68:3-11, 24-25, 69:1, 6-10; Moore Depo. (Ex. "E") at 35:22-36:3, 41:23-42:1, 54:16-18, 67:15, 19-21; Gaytan Depo. (Ex. "I") at 38:1-23. | Disputed that Mr. Perez was running toward the gun.<br><br>Mr. Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.<br><br>Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |

34. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state
that Perez ran away from the BIP to avoid being struck by additional projectiles.
Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs
present additional unrelated and unsupported facts to manufacture a dispute of
fact.  Importantly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See*
Defendants' Evidentiary Objections.

Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not
create a dispute of fact.  Thus, this fact is undisputed for the purpose of this
Motion.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| 35. After the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.<br><br>Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. | Disputed that the less-lethal rounds were ineffective.<br><br>The deputies failed to give Mr. Perez time to comply with the 40 mm rounds. DeFoe Decl. at ¶ 16-17.<br><br>Mr. Perez was struck by two or three 40 millimeter "BIP" rounds within a 12 second timeframe.<br>Ex. J to Anderson Decl. ("Incident Audio") at 31:39-31:50.<br><br>Mr. Perez flinched in reaction to being struck by the BIP rounds.<br>Ex. 2 to Leap Decl. ("McCarthy Depo.") at 22:19-23:3; Ex. 3 to Leap Decl. ("Olivas Depo.") at 22:6-9; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 55:17-23.<br><br>Mr. Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.<br><br>Disputed that an objectively reasonable officer in the position of the deputies would have formed an objectively reasonable belief that Mr. Perez posed an immediate threat of death or serious bodily injury.<br>Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. |

23

MANNING | KASS

MK

| | |
|---|---|
| | DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |
| | At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table. Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:15-18, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |
| | When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. |
| | The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting. Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:16, Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |
| | Under the facts of this case, the Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away. |

24

| | |
|---|---|
| 1 | DeFoe Decl. at ¶ 6, 8. |
| 2 | |
| 3 | Mr. Perez was moving away from the Deputies during all of the shots. Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:1821; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | The trajectories of the bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot. Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i). |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5. |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | Pursuant to the deputies' training, it would not have been appropriate to shoot Mr. Perez when he was sitting on the bar stool with the firearm in his hand with his finger on the trigger. Ex. 1 to Leap Decl. ("Moore Depo.") at 28:20-29:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 33:5-11. |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

Mr. Perez never pointed the firearm at anyone, including the reporting party. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22' Ex. 1 to Leap Decl. ("Moore Depo.") at 66:20-24); Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:19-50:5.

Mr. Perez never fired any shots from the gun.
Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-17:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14.

Mr. Perez never threatened to fire the gun.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-24, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:9-16:24, 61:13-62:6; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex.5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:22-25, 27:4-13; 32:7-23; Ex. 8 Leap

26

MANNING | KASS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANNING | KASS

|  | Decl. ("Fregoso Depo.") at 46:19-50:5. |
|  | When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun.<br>Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:413; 32:7-23. |
|  | At no point while Mr. Perez's finger was on the trigger of the gun did any of the Deputies use force against Mr. Perez.<br>Ex. 5 to Leap Decl. ("Stone Depo.") at 47:23-48:9. |

35. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state that Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections.

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Plaintiffs' do not dispute that Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each

27

1 fired lethal rounds, at Perez in order to **stop the immediate threat they perceived**
2 **from Perez' actions**.

3 Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence
4 submitted does not create a dispute of fact.  Thus, this fact is undisputed for the
5 purpose of this Motion.

| 36. The deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. | Disputed that it was reasonable for the deputies to believe that Perez was trying to get the gun to shoot someone. |
| --- | --- |
| | Mr. Perez did not start running until the less-lethal was deployed, and Mr. Perez was running away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25. |
| Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23. | Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |
| | At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table. Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:15-18, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, |

28

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

69:6-13; Ex. 6 to Leap Decl. ("Gaytan
Depo.") at 37:9-16.

When the shots started, the deputies
could see Mr. Perez's hands and could
see that there was nothing in his hands.
Ex. 4 to Leap Decl. ("McCarthy
Depo.") at 41:13-25; Ex. 5 to Leap
Decl. ("Stone Depo.") at 26:10-18; Ex.
6 to Leap Decl. ("Gaytan Depo.") at
29:10-15.

The Deputies did not see Mr. Perez
reach for the gun after he placed it on
the ground, prior to the shooting. Ex. 3
to Leap Decl. ("Olivas Depo.") at 62:9-
14; Ex. 5 ("Stone Depo.") at 43:1- 6,
Ex. 6 to Leap Decl. ("Gaytan Depo.")
at 37:9-16.

Under the facts of this case, the
Deputies could not justify shooting at
Mr. Perez simply because Mr. Perez
was running away.
DeFoe Decl. at ¶ 6, 8.

Mr. Perez was moving away from the
Deputies during all of the shots. Ex. 1
to Leap Decl. ("Moore Depo.") at
45:17-46:11; Ex. 2 to Leap Decl.
("Pollick Depo.") at 27:2-11, 28:17-
29:5, 43:8-11; Ex. 3 to Leap Decl.
("Olivas Depo.") at 29:11-21, 32:1821;
Ex. 4 to Leap Decl. ("McCarthy
Depo.") at 59:7-11; 61:7-20.

The trajectories of the bullet wounds

MANNING | KASS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANNING | KASS

indicate that Mr. Perez was falling to the ground or on the ground when he was shot.
Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i).

Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5.

Pursuant to the deputies' training, it would not have been appropriate to shoot Mr. Perez when he was sitting on the bar stool with the firearm in his hand with his finger on the trigger. Ex. 1 to Leap Decl. ("Moore Depo.") at 28:20-29:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 33:5-11.

At no point while Mr. Perez's finger was on the trigger of the gun did any of the Deputies use force against Mr. Perez.
Ex. 5 to Leap Decl. ("Stone Depo.") at 47:23-48:9.

When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap

30

Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:413; 32:7-23.

Mr. Perez never pointed the firearm at anyone, including the reporting party. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22' Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2024); Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:1950:5.

Mr. Perez never fired any shots from the gun. Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-17:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14.

Mr. Perez never threatened to fire the gun. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-24, 66:20-24; Ex. 2 to Leap

31

MANNING | KASS

| | |
|---|---|
| | Decl. ("Pollick Depo.") at 15:9-16:24, 61:13-62:6; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:22-25, 27:4-13; 32:7-23; Ex. 8 Leap Decl. ("Fregoso Depo.") at 46:19-50:5. |
| | Perez never verbally threatened to injure anyone. Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-24; Deposition of Anthony Alcala ("Alcala Depo.") attached as "Exhibit 7" to Leap Decl., at 20:22-25, Deposition of Helen Fregoso ("Fregoso Depo.") attached as "Exhibit 8" to Leap Decl. at 46:19-50:5. |

36. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state that Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections.

Plaintiffs' do not dispute that ***the deputies reasonably believed that Perez was trying to get to the gun to shoot someone***, and that ***Perez was within arms' reach of where the gun was located on the floor***. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11,

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.

Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 37. Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun.<br><br>Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23. | Disputed.<br><br>Mr. Perez was running away from the BIP to avoid being struck by additional projectiles.<br>Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.<br><br>Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21.<br><br>At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table.<br>Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:15-18, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |

| | |
|---|---|
| | When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. |
| | The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting. Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:1-6, Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |
| | Under the facts of this case, the Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away. DeFoe Decl. at ¶ 6, 8. |
| | Mr. Perez was moving away from the Deputies during all of the shots. Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:1821; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20. |
| | The trajectories of the bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot. |

34

Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i).

Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5.

Pursuant to the deputies' training, it would not have been appropriate to shoot Mr. Perez when he was sitting on the bar stool with the firearm in his hand with his finger on the trigger. Ex. 1 to Leap Decl. ("Moore Depo.") at 28:20-29:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 33:5-11.

At no point while Mr. Perez's finger was on the trigger of the gun did any of the Deputies use force against Mr. Perez.
Ex. 5 to Leap Decl. ("Stone Depo.") at 47:23-48:9.

When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:413; 32:7-23.

Mr. Perez never pointed the firearm at anyone, including the reporting party. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22' Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2024); Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:1950:5.

Mr. Perez never fired any shots from the gun. Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-17:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14.

Mr. Perez never threatened to fire the gun. Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-24, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:9-16:24, 61:13-62:6; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:22-25, 27:4-13; 32:7-23; Ex. 8 Leap Decl. ("Fregoso Depo.") at 46:19-50:5. Perez never verbally threatened to injure anyone. Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-24; Deposition of Anthony Alcala ("Alcala Depo.") attached as "Exhibit 7" to Leap Decl., at 20:22-25, Deposition of Helen Fregoso ("Fregoso Depo.") attached as "Exhibit 8" to Leap Decl. at 46:19-50:5. |
|---|---|

37. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state that Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections.

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Plaintiffs' do not dispute that the **deputies believed that Perez was running back into the garage for any other reason than to get back to the gun.** *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.

Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence

| | |
|---|---|
| submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion. | |
| 38. Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving.<br><br>Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. | Disputed to the extent that this mischaracterizes the evidence, as the deputies fired shots at Perez as he was going to the ground and after he was on the ground.<br>Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i).<br><br>During Deputy Pollick's second volley of shots, he was aiming at Mr. Perez's lower legs after Mr. Perez was on the ground behind the pool table. Ex. 2 to Leap Decl. ("Pollick Depo.") at 10:1012; 27:2-11; 33:1-17; 43:8-11. |

38. Moving Party's Response:

The evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Bennet Omalu M.D.'s declaration [Doc. 45-11] is inadmissible. *See* Defendants' Evidentiary Objections. Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendant's liability in this action. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 39. The deputies at the scene retrieved an SED robot, to confirm that Perez was no longer a threat. Once it was confirmed Perez was no longer moving, the SED Team approached and secured to scene.<br><br>Gaytan Decl., ¶ 18; McCarthy Decl., ¶ 19; Olivas Decl., ¶ 19; Pollick | Disputed that Mr. Perez was ever a threat.<br><br>Mr. Perez was running away from the BIP to avoid being struck by additional projectiles.<br>Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

MANNING | KASS

| | |
|---|---|
| Decl., ¶ 19; Moore Decl., ¶ 19; Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 44:9-13, 45:4-9, McCarthy Depo. (Ex. "D") at 70:11-12, 16-19; Incident Audio (Ex. "J") at 32:10-36:00. | Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles. DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. |
| | At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table. Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:15-18, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |
| | When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. |
| | The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting. Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:1-6, Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MK MANNING | KASS

| | |
|---|---|
| | Under the facts of this case, the Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away.<br>DeFoe Decl. at ¶ 6, 8.<br><br>Mr. Perez was moving away from the Deputies during all of the shots. Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:1821; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20.<br><br>The trajectories of the bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot.<br>Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i).<br><br>Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5.<br><br>Pursuant to the deputies' training, it would not have been appropriate to shoot Mr. Perez when he was sitting on |

40

the bar stool with the firearm in his hand with his finger on the trigger. Ex. 1 to Leap Decl. ("Moore Depo.") at 28:20-29:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 33:5-11.

At no point while Mr. Perez's finger was on the trigger of the gun did any of the Deputies use force against Mr. Perez.
Ex. 5 to Leap Decl. ("Stone Depo.") at 47:23-48:9.

When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:413; 32:7-23.

Mr. Perez never pointed the firearm at anyone, including the reporting party.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25,

10:14-22' Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2024); Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:1950:5.

Mr. Perez never fired any shots from the gun.
Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-17:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14.

Mr. Perez never threatened to fire the gun.
Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-24, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:9-16:24, 61:13-62:6; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:22-25, 27:4-13; 32:7-23; Ex. 8 Leap Decl. ("Fregoso Depo.") at 46:19-50:5.

Perez never verbally threatened to injure anyone.
Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-24; Deposition of Anthony Alcala ("Alcala Depo.") attached as "Exhibit 7" to Leap Decl., at 20:22-25, Deposition of Helen Fregoso ("Fregoso Depo.") attached as "Exhibit 8" to Leap Decl. at 46:19-50:5.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

39. Moving Party's Response:

As an initial matter, contrary to Plaintiffs' assertion Deputy Stone did not state that Perez ran away from the BIP to avoid being struck by additional projectiles. Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25.

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections.

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 40. Corporal Pollick and Corporal McCarthy approached Perez and saw that Perez was laying on top of the gun.<br><br>Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 71:1-4, 8-12; Moore Depo. (Ex. "E") at 82:1-11, 83:13-22; Incident Audio (Ex. "J") at 36:00-37:20. | Disputed to the extent that Perez was lying on top of the gun.<br><br>When the Deputies approached Mr. Perez after the shooting, McCarthy observed the gun near Mr. Perez's, left arm. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 71:11-16. |

40. Moving Party's Response:

Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 41. Deputy Stone saw the gun sticking out from under Perez' stomach where his hands were also located, and | Undisputed. Plaintiffs dismiss their claim for denial of medical care. |

43

MANNING | KASS

| | |
|---|---|
| kicked it away from him so that Corporal Pollick and Corporal McCarthy could start to provide medical aid.<br><br>Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 70:16-19, 71:1-4; Moore Depo. (Ex. "E") at 81:14-25, Olivas Depo. (Ex. "F") at 52:14-18; Incident Audio (Ex. "J") at 36:00-37:20. | |
| 42. Corporal Pollick and Corporal McCarthy, who are certified EMTs, provided immediate medical aid to Perez, who was still breathing when they approached him.<br><br>Gaytan Decl., ¶ 18; McCarthy Decl., ¶ 19; Olivas Decl., ¶ 19; Pollick Decl., ¶ 19; Moore Decl., ¶ 19; Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 45:10-14, 46:3-14, 17-20, 47:8-20; McCarthy Depo. (Ex. "D") at 70:22-24, 71:3-4, 17-22; Olivas Depo. (Ex. "F") at 57:12-17; Incident Audio (Ex. "J") at 37:20-39:30. | Undisputed. Plaintiffs dismiss their claim for denial of medical care. |
| 43. Victorville Fire Department and American Medical Response were staged in the area, and responded and provided medical treatment immediately after the scene was secured.<br><br>Pollick Depo. (Ex. "C") at 46:21-47:4; McCarthy Depo. (Ex. "D") at 74:18-21, 75:1-17; Olivas Depo. (Ex. "F") at 57:12-23. | Undisputed. Plaintiffs dismiss their claim for denial of medical care. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

| 44. Perez was transported to Victor Valley Global Medical Center for treatment.<br><br>Pollick Depo. (Ex. "C") at 46:15-16. | Undisputed. Plaintiffs dismiss their claim for denial of medical care. |
|---|---|
| 45. The deputies on the scene were not able to give commands to Perez before to lethal force encounter occurred as the situation was very dynamic, uncertain, and rapidly-evolving.<br><br>Pollick Depo. (Ex. "C") at 26:9-16, 33:18-23; Moore Depo. (Ex. "E") at 51:6-10 | Plaintiffs dispute this self-serving statement.<br><br>At the time of this incident, the Deputies were trained, pursuant to basic police training, that officers shall give a verbal warning before using deadly force, when feasible. DeFoe Decl. at ¶ 5(d); Ex. 4 to Leap Decl. ("McCarthy Depo.") at 21:14-17; Ex. 3 to Leap Decl. ("Olivas Depo.") at 59:12-14; Ex. 1 to Leap Decl. ("Moore Depo.") at 70:14-18.<br><br>In this case, it would have been feasible for the deputies to give Perez a verbal warning prior to using deadly force, but they failed to do so. DeFoe Decl. at ¶ 9. |

45. Moving Party's Response:

The evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.  Importantly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 46. San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, states that a deputy may use deadly force to protect himself or others from what he reasonably believes to be a threat of death or serious bodily injury.<br><br>Pollick Depo. (Ex. "C") at 56:13-19; Moore Depo. (Ex. "E") at 65:17-18, 22-24, 66:7-10, 14-18; Olivas Depo. (Ex. "F") at 58:11-14; Use of Force Policy (Ex. M"). | Objection: Irrelevant.<br><br>When the Deputies fired their shots, there was no immediate threat of death or serious bodily injury.<br>DeFoe Decl. at ¶ 13 (a-l).<br><br>At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table. Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:1518, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16.<br><br>When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15.<br>The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting. Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:16, Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16.<br><br>Under the facts of this case, the |

46

| | |
|---|---|
| | Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away. |
| | DeFoe Decl. at ¶ 6, 8. |
| | Mr. Perez was moving away from the Deputies during all of the shots. Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:18-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20. |
| | The trajectories of the bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot. Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i). |
| | Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5. |

46. Moving Party's Response:

The evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact.

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections.  Further, Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.  Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact.  Thus, this fact is undisputed for the purpose of this Motion.

| | |
|---|---|
| 47. Since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore, Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves or others from what they reasonably believe to be an immediate threat of death or serious bodily injury.<br><br>Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M"). | Objection: Irrelevant.<br><br>When the Deputies fired their shots, there was no immediate threat of death or serious bodily injury. DeFoe Decl. at ¶ 13 (a-l).<br><br>At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table. Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:1518, 15:9-17, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16.<br><br>When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. |

48

**MK MANNING | KASS**

| | |
|---|---|
| | The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting.<br>Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:16, Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16.<br><br>Under the facts of this case, the Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away.<br>DeFoe Decl. at ¶ 6, 8.<br><br>Mr. Perez was moving away from the Deputies during all of the shots. Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:18-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20.<br><br>The trajectories of the bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot.<br>Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i).<br><br>Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that |

49

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| | person's hands. Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5. |

47. Moving Party's Response:

Further, the evidence cited by Plaintiffs does not dispute this fact, rather Plaintiffs present additional unrelated and unsupported facts to manufacture a dispute of fact. Importantly, Scott DeFoe's declaration [Doc. 45-10] and Bennet Omalu M.D.'s declaration [Doc. 45-11] are inadmissible. *See* Defendants' Evidentiary Objections. Further, Plaintiffs' dispute to this fact is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Accordingly, Plaintiffs' dispute is not to the fact presented, and the evidence submitted does not create a dispute of fact. Thus, this fact is undisputed for the purpose of this Motion.

| PLAINTIFFS' ADDITIONAL MATERIAL FACTS | DEFENDANTS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **Background of the Shooting** | |
| 48. Prior to the shooting, Deputy Moore, Deputy Pollick, Deputy Olivas, and Corporal McCarthy ("the deputies") had information that Mr. Perez was mentally ill or experiencing a mental health crisis and was "possibly 5150."<br><br>Deposition of Andrew Pollick, ("Pollick Depo.") attached to Leap Decl. as "Exhibit 2," at 16:8-13. | Disputed.<br><br>The evidence cited does not support the fact asserted. Rather, Corporal Pollick stated there was a discussion that Perez might be 5150. Pollick Depo. attached to Leap Decl. as "Exhibit 2," at 16:8-13.<br><br>Rather, the evidence shows that Sergeant Gaytan told members of the SED Team that there was a subject that had threatened a female with a firearm, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not |

50

| | |
|---|---|
| | live. *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6.<br><br>Further, the SED Team learned that Perez was kind of nodding off, he was kind of lucid, and that it was unclear if he was under the influence of any narcotics or alcohol. *See* Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶ 14.<br><br>Importantly, Plaintiff presented no evidence that Perez was mentally ill or experiencing a mental health crisis and was "possibly 5150." |
| 49. Prior to the shooting, the Deputies had no specific information that Mr. Perez verbally threatened to injure anyone.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo.") at 61:13-62:6; Deposition of Anthony Alcala ("Alcala Depo.") attached as "Exhibit 7" to Leap Decl., at 20:22-25, Deposition of Helen Fregoso ("Fregoso Depo.") attached as "Exhibit 8" to Leap Decl. at 46:19-50:5. | Disputed.<br><br>Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket. *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.<br><br>Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live. *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MK MANNING | KASS

| | | |
|---|---|---|
| 1 2 3 4 | | Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6.<br><br>Further, the evidence cited does not support the fact asserted. |
| 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 | 50. At the time of the incident, the Deputies had no information that Mr. Perez had committed an act of violence against another person.<br><br>Deposition of Christina Olivas ("Olivas Depo.") attached as Ex. 3 to Leap Decl. at 48:10-20; Deposition of Luke Gaytan ("Gaytan Depo."), attached as Ex. 6 to Leap Decl. at 10:14-22. | Disputed.<br><br>Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket. *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.<br><br>Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live. *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6.<br><br>Further, the evidence cited does not support the fact asserted. |
| 24 25 26 27 28 | 51. At the time of the incident, the Deputies had no information that Mr. Perez committed a felony involving the infliction of injury or death.<br><br>Ex. 6 to Leap Decl. ("Gaytan Depo."), at 49:16-50:6; Deposition of | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| David Moore ("Moore Depo."), attached as Exhibit 1 to Leap Decl. at 22:6-14. | the garage, causing a disturbance, and that he had a gun in his front right pocket. *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.

Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live. *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. |
| 52.At the time of the incident, the Deputies had no information that Mr. Perez had injured another person.

Ex. 1 to Leap Decl. ("Moore Depo.") at 22:6-14; Ex. 3 to Leap Decl. ("Olivas Depo.") at 47:3-6. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.

Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket. *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.

Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live. *See* Gaytan Decl., ¶ 2; |

53

| | | |
|---|---|---|
| | | McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. |
| 53. | At the time of the shooting, the Deputies had no information that Mr. Perez was under the influence of any illegal substances.<br><br>Deposition of Cory McCarthy ("McCarthy Depo.") attached to Leap Decl. as "Exhibit 4," at 25:13-18; Ex. 1 to Leap Decl. ("Moore Depo.") at 13:8-14; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:16-21. | Disputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The SED Team learned that Perez was kind of nodding off, he was kind of lucid, and that it was unclear if he was under the influence of any narcotics or alcohol.  *See* Gaytan Decl., ¶ 14; McCarthy Decl., ¶ 15; Olivas Decl., ¶ 15; Pollick Decl., ¶ 15; Moore Decl., ¶ 15; Stone Decl., ¶ 14. |
| 54. | Mr. Perez never pointed the firearm at anyone, including the reporting party.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Deposition of Joshua Stone ("Stone Depo.") attached to Leap Decl. as Exhibit 5, at 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23; Ex. 8 to Leap Decl. ("Fregoso Depo.") at 46:19-50:5. | Disputed.<br><br>Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket.  *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.<br><br>Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live.  *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| | Lastly, the evidence cited does not support the fact asserted. |
| 55. Mr. Perez never fired any shots from the gun.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-16:6; 32:19-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-17:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 56:5-14. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 56. Mr. Perez never threatened to fire the gun.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-24, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:9-16:24; 61:13-62:6; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:1015; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 20:22-25, 27:4-13; 32:7-23; Ex. 8 Leap Decl. ("Fregoso Depo.") at 46:19-50:5. | Disputed.<br><br>Importantly, the reporting party, Helen Fregoso, reported her daughter's friend, Albert Perez ("Perez"), was in the garage, causing a disturbance, and that he had a gun in his front right pocket.  *See* Call Log History (Ex. "A") at pg. 1; Fregoso Depo. (Ex. "B") at 32:5-17, 22-25, 33:1-3.<br><br>Further, Sergeant Gaytan ("Sergeant Gaytan") told members of the SED Team to respond to Zenda Street in Victorville for a barricade situation ***where the subject had threatened a female with a firearm***, and the subject was still armed and barricaded in the garage of a multi-unit complex where he did not live.  *See* Gaytan Decl., ¶ 2; McCarthy Decl., ¶ 2; Olivas Decl., ¶ 2; Pollick Decl., ¶ 2; Moore Decl., ¶ 2; Stone Decl., ¶ 2; McCarthy Depo. (Ex. "D") at 9:4-10. 24:1-6. |
| 57. At no point while Mr. Perez's finger was on the trigger of the gun did any of the Deputies use force on Mr. Perez. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MK MANNING | KASS

| | |
|---|---|
| Ex. 5 to Leap Decl. ("Stone Depo.") at 47:23-48:9. | |
| 58. When Mr. Perez was holding the gun when he sat on the stool, he never raised the gun.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 66:20-24; Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:18-23; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 66:19-67:7; Ex. 5 to Leap Decl. ("Stone Depo.") at 24:7-16, 47:10-15; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 9:15-25, 10:14-22; Ex. 7 to Leap Decl. ("Alcala Depo.") at 27:4-13; 32:7-23 | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 59. Deputy Alcala instructed Mr. Perez to put the firearm on the ground, and Mr. Perez complied with that command by placing the firearm on the ground between the stool on which he was sitting and the pool table.<br><br>Ex. 7 to Leap Decl. ("Alcala Depo.") at 32:2, 34-33:19; Ex. 1 to Leap Decl. ("Moore Depo.") at 16:5-17, Ex. 3 to Leap Decl. ("Pollick Depo.") at 12:15-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:25-21:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 39:3-18. | Undisputed. |
| 60. At the time Mr. Perez put the firearm on the ground, Deputy Moore, Deputy Pollick, and Corporal McCarthy could see the firearm on the ground from their vantage points. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |

DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS

**MK** MANNING | KASS

| | |
|---|---|
| Ex. 1 to Leap Decl. ("Moore Depo.") at 16:5-12; Ex. 2 to Leap Decl. ("Pollick Depo.") at 12:9-18; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 39:3-13. | |
| 61. Prior to the shooting, Deputy Pollick communicated to all deputies on scene that Mr. Perez had put the firearm on the ground.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo."), at 15:9-17' Ex. 6 to Leap Decl. ("Gaytan Depo.") at 17:21-23. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 62. Deputy Alcala instructed Mr. Perez to stand up from the stool, and Mr. Perez complied by standing up from the stool.<br><br>Ex. 7 to Leap Decl. ("Alcala Depo.") at 35:12-20. | Undisputed. |
| 63. Deputy Alcala then instructed Mr. Perez to walk toward the deputies, and Mr. Perez complied by slowly walking toward the deputies.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 14:12-15-8; Ex. 7 to Leap Decl. ("Alcala Depo.") at 41:18-25, 42:10-13; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 41:18-25. | Undisputed. |
| 64. Sergeant Gaytan instructed Mr. Perez to stop when Mr. Perez reached the southwest corner of the pool table, | Undisputed. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| and Mr. Perez complied by stopping at the corner of the pool table.<br><br>Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 47:11-15. | |
| 65. The deputies considered all four of these acts of compliance by Mr. Perez.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 39:3-18, 41:13-42:2; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7; Ex. 7 to Leap Decl. ("Alcala Depo.") at 33:17-19, 35:12-20, 41:18-25, 47:11-15. | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 66. When Mr. Perez stopped at the southwest corner of the pool table, he was at least 7-13 feet from the firearm.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 39:24-40:9; Ex. 2 to Leap Decl. ("Pollick Depo.") at 19:22-20:4; Ex. 4 to Leap Decl. ("McCarthy Depo") at 47:1-5; Ex. 7 ("Alcala Depo.") at 46:11-20. | Undisputed. |
| 67. When Mr. Perez stopped at the southwest corner of the pool table, he was approximately 5-7 feet from the deputies.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 39:24-40:9; Ex. 2 to Leap Decl. | Undisputed. |

58

| | | |
|---|---|---|
| 1<br>2 | ("Pollick Depo.") at 19:22-20:4; Ex. 7 ("Alcala Depo.") at 46:11-20. | |
| 3<br>4<br>5<br>6<br>7<br>8 | 68. When Mr. Perez stopped at the end of the pool table, the deputies could see that his hands were visibly empty.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25. Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. | Undisputed. |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 69. Sergeant Gaytan then instructed Mr. Perez to turn around and get on his knees.<br><br>Belt Recording of Sergeant Luke Gaytan ("Incident Audio") attached to Declaration of Kayleigh Anderson ("Anderson Decl.") as Exhibit J at 30:29-30:59; Ex. 7 to Leap Decl. ("Alcala Depo.") at 52:9-14. | Disputed as to the timeline of events. Undisputed that Sergeant Gaytan then instructed Mr. Perez to turn around and get on his knees.<br><br>First, Sergeant Gaytan communicated to Perez that the deputies were going to have to take him into custody, which appeared to the deputies to frustrate Perez, and lead the deputies to believe that Perez was no longer cooperating. *See* Moore Depo. (Ex. "E") at 21:22-22:1, 41:10-16; Olivas Depo. (Ex. "F") at 19:24-20:7, 49:3-25; Stone Depo. (Ex. "G") at 48:16-18; Gaytan Depo. (Ex. "I") at 40:5-13, 23-25, 41:1-19; Incident Audio (Ex. "J") at 28:00-31:50.<br><br>Then, for a few minutes, while Sergeant Gaytan continued to talk to Perez to have him peacefully surrender, Perez stood parallel to the middle of the pool table, approximately eight feet north of the garage opening and approximately eight feet away from the gun's location, Perez then put his hands up |

59

MANNING | KASS

| | | |
|---|---|---|
| | | and shook his head back and forth, with an irritated and frustrated look, without making eye contact with anyone. *See* Pollick Depo. (Ex. "C") at 13:7-19; McCarthy Depo. (Ex. "D") at 47:1-12, 53:3-7; Moore Depo. (Ex. "E") at 14:18-21, 21:22-22:1, 39:24-25, 40:1, 8-9, 24-25, 41:1-3, 10-16; Stone Depo. (Ex. "G") at 31:8-10; Gaytan Depo. (Ex. "I") at 31:5-14, 40:23-41:19; Incident Audio (Ex. "J") at 28:00-31:50; Garage Photos (Ex. "L"). |
| 70. | After Sergeant Gaytan instructed Mr. Perez to turn around and get on his knees, Mr. Perez took an approximately half-foot step back with his left foot and began to turn to his left.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. ("Pollick Depo.") at 20:19-24. | Undisputed.<br><br>However, when Sergeant Gaytan communicated to Perez that the deputies were going to have to take him into custody, which appeared to the deputies to frustrate Perez, and lead the deputies to believe that Perez was no longer cooperating. *See* Moore Depo. (Ex. "E") at 21:22-22:1, 41:10-16; Olivas Depo. (Ex. "F") at 19:24-20:7, 49:3-25; Stone Depo. (Ex. "G") at 48:16-18; Gaytan Depo. (Ex. "I") at 40:5-13, 23-25, 41:1-19; Incident Audio (Ex. "J") at 28:00-31:50.<br><br>Then, for a few minutes, while Sergeant Gaytan continued to talk to Perez to have him peacefully surrender, Perez stood parallel to the middle of the pool table, approximately eight feet north of the garage opening and approximately eight feet away from the gun's location, Perez then put his hands up and shook his head back and forth, with an irritated and frustrated look, without making eye contact with |

| | |
|---|---|
| | anyone.  *See* Pollick Depo. (Ex. "C") at 13:7-19; McCarthy Depo. (Ex. "D") at 47:1-12, 53:3-7; Moore Depo. (Ex. "E") at 14:18-21, 21:22-22:1, 39:24-25, 40:1, 8-9, 24-25, 41:1-3, 10-16; Stone Depo. (Ex. "G") at 31:8-10; Gaytan Depo. (Ex. "I") at 31:5-14, 40:23-41:19; Incident Audio (Ex. "J") at 28:00-31:50; Garage Photos (Ex. "L"). |
| **Less-Lethal Preceding the Shooting** | |
| 71. Before Mr. Perez took the step back with his left foot following Sergeant Gaytan's commands, Deputy Stone fired a 40 millimeter blunt impact projectile ("BIP") less lethal round at Mr. Perez.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 26:22-27:3; Ex. 1 to Leap Decl. ("Moore Depo.") at 41:4-9, 55:1-3; Ex. 2 to Leap Decl. ("Pollick Depo.") at 20:19-24. | Disputed.<br><br>***After Perez stepped back***, Deputy Stone deployed a less-lethal 40-millimeter round, as was discussed in the SED Teams planning briefing, which hit Perez somewhere between his waist and the top of his shoulders. *See* Pollick Depo. (Ex. "C") at 20:25-21:8; McCarthy Depo. (Ex. "D") at 52:25-53:12, 70:2-9; Moore Depo. (Ex. "E") at 34:23-35:17, 36:8-14, 41:20-22, 54:10-15; Olivas Depo. (Ex. "F") at 21:16-22:9, 50:1-3; Stone Depo. (Ex. "G") at 27:4-28:4, 8-25, 29:1-8, 12-17, 46:11-18, 48:19-49:6; Gaytan Depo. (Ex. "I") at 28:18-29:9; Incident Audio (Ex. "J") at 31:49-31:57.<br><br>Specifically, Sergeant Gaytan made it clear to the SED Team that if the suspect was to separate himself from the firearm, the team could not allow him to gain access back to that firearm because we did not want him to be able to shoot at us or any members of the public. *See* Gaytan Decl., ¶ 12; McCarthy Decl., ¶ 12; Olivas Decl., ¶ |

MANNING | KASS

MK

|  |  |
|---|---|
|  | 12; Pollick Decl., ¶ 12; Moore Decl., ¶ 12; Stone Decl., ¶ 12; Pollick Depo. (Ex. "C") at 6:25-7:7; McCarthy Depo. (Ex. "D") at 45:19-46:2, 76:2-8; Moore Depo. (Ex. "E") at 29:15-30:1; Olivas Depo. (Ex. "F") at 20:18-21:2; Stone Depo. (Ex. "G") at 28:19-29:8. |
| 72. Deputy Stone perceived that his BIP struck Mr. Perez on the right side of his torso.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 28:15-18. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 73. Deputy Stone deployed two additional BIP rounds.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 32:11-33:10. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 74. Sergeant Gaytan also deployed one BIP round, striking Mr. Perez in his back.<br><br>Ex. 6 to Leap Decl. ("Gaytan Depo.") at 34:13-18. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action |
| 75. Mr. Perez was struck by two or three 40 millimeter "BIP" rounds within a 1-2 second timeframe.<br><br>Ex. J to Anderson Decl. ("Incident Audio") at 31:39-31:50. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 76. Mr. Perez flinched in reaction to being struck by the BIP rounds.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo.") at 22:19-23:3; Ex. 3 to Leap Decl. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | | |
|---|---|---|
| 1<br>2<br>3 | ("Olivas Depo.") at 22:6-9; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 55:17-23. | |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | 77.Mr. Perez was not advancing or charging at any person, including any deputies when Deputy Stone and Sergeant Gaytan fired their BIP rounds.<br><br>Ex. 3 to Leap Decl. ("Olivas Depo.") at 22:21-23; Ex. 5 ("Stone Depo") at 26:22-11). | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the evidence cited does not support the fact asserted.<br><br>Further, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 78.Deputy Stone and Sergeant Gaytan observed that Mr. Perez's hands were empty at the time they deployed their BIP rounds.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:1015. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and *in response to Perez accelerating toward the back of the pool table where the gun was located*, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, |

MANNING | KASS

| | |
|---|---|
| | at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 79. Mr. Perez was unarmed when he was struck by the BIP rounds.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 57:12-14; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18, 30:11-24; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and ***in response to Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 80. At the time of the second BIP round, Mr. Perez was moving away from the first BIP round and away from the deputies.<br><br>Ex. J to Anderson Decl. ("Incident Audio") at 30:25-31:05; Ex. 3 to Leap Decl. ("Olivas Depo.) at Ex. 7 | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and ***in response to Perez accelerating toward the back of the pool table where the gun was*** |

64

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| to Leap Decl. ("Alcala Depo.") at 52:9-14; Ex. 5 to Leap Decl. ("Stone Depo.) at 31:25-33:10. | *located*, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 81. Mr. Perez was approximately 6-8 feet from the firearm at the time he was struck by the first BIP round.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 31:6-10. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and *in response to Perez accelerating toward the back of the pool table where the gun was located*, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 82. Based on police training, a BIP round can cause injury.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 17:15-21. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |

| | |
|---|---|
| 83. BIP rounds have a recognizably different sound than lethal rounds.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 54:4-19; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 35:2536:4. | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 84. No deputy issued a verbal warning to Mr. Perez that they would deploy less lethal munitions against him prior to deploying less lethal munitions.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 38:5-7; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 36:1921; Ex. J to Anderson Decl. ("Incident Audio") at 31:30-31:51. | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>The evidence shows that the deputies on the scene were not able to give commands to Perez before to lethal force encounter occurred as the situation was very dynamic, uncertain, and rapidly-evolving. *See* Pollick Depo. (Ex. "C") at 26:9-16, 33:18-23; Moore Depo. (Ex. "E") at 51:6-10 |
| 85. Mr. Perez ran away from the BIP to avoid being struck by additional projectiles and did not start running until the less-lethal shots began.<br><br>Ex. 5 to Leap Decl. ("Stone Depo.") at 49:10-25; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 33:20-34:18. | Disputed.<br><br>First, the evidence cited does not support the fact asserted.<br><br>Rather, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| | Audio (Ex. "J") at 31:49-31:57. |
| 86. Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to run away from the less lethal to avoid being struck by additional projectiles.<br><br>DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 56:17-21. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Further, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See* Defendants' Evidentiary Objections. |
| **The Shooting** | |
| 87. The first lethal round was fired simultaneously or within the same second as the final less-lethal round.<br><br>Ex. J to Anderson Decl. ("Incident Audio") at 31:50; Ex. 5 to Leap Decl. ("Stone Depo.") at 37:2038:2. | Disputed.<br><br>First, the evidence cited does not support the fact asserted.<br><br>The evidence shows that ***after the less-lethal rounds had been deployed*** and were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | | |
|---|---|---|
| | | Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 88. | When the shots started, the deputies could see Mr. Perez's hands and could see that there was nothing in his hands. <br><br> Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-25; Ex. 5 to Leap Decl. ("Stone Depo.") at 26:10-18; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 29:10-15. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. <br><br> Further, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 89. | Deputy Moore fired five shots. <br><br> Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11. | Undisputed. <br><br> Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. *See* Pollick Depo. (Ex. "C") at 44:6-8; |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| | Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 90. Deputy Olivas fired three shots.<br><br>Ex. 3 to Leap Decl. ("Olivas Depo.") at 6:15-16, 25:1-3, 28:1517; 29:11-21. | Undisputed.<br><br>Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 91. Corporal McCarthy fired fourteen shots, including shots to the back of Mr. Perez's head.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:7-11; 61:7-20. | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 92. Deputy Pollick fired approximately fifteen shots.<br><br>Ex. 2 to Leap Decl. ("Pollick Depo.") at 10:10-12; 27:2-11; 33:117; 43:8-11. | Undisputed.<br><br>Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 93. During Deputy Pollick's second volley of shots, he was aiming at Mr. Perez's lower legs after Mr. Perez was on the ground behind the pool table. | Undisputed. However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, Sergeant Gaytan ordered |

69

| | |
|---|---|
| Ex. 2 to Leap Decl. ("Pollick Depo.") at 10:10-12; 27:2-11; 33:1-17; 43:8-11. | the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving.  *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 94. Mr. Perez was moving away from the Deputies during all of the shots.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 45:17-46:11; Ex. 2 to Leap Decl. ("Pollick Depo.") at 27:2-11, 28:17-29:5, 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 29:11-21, 32:18-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 59:711; 61:7-20. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 95. At the time of all the shots, the deputies knew the firearm was on the ground, behind the pool table.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 67:10-16; 67:23-24; 68:7-23; Ex. 2 to Leap Decl. ("Pollick Depo") at 12:15-18, 15:917, 22:15-18, 41:16-42:11, Ex. 3 to Leap Decl. ("Olivas Depo") at 17:16-18, 62:9-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired |

70

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

**MK MANNING | KASS**

| | | |
|---|---|---|
| 1 2 | 66:19-67:7, 69:6-13; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. | lethal rounds, at Perez in order to stop the immediate threat they perceived |
| 3 | | from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, |
| 4 | | 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19- |
| 5 | | 22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas |
| 6 7 | | Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 8 9 10 | 96. The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting. | Disputed. First, the evidence cited does not support the fact asserted. |
| 11 12 13 | Ex. 3 to Leap Decl. ("Olivas Depo.") at 62:9-14; Ex. 5 ("Stone Depo.") at 43:1-6; Ex. 6 to Leap Decl. ("Gaytan Depo.") at 37:9-16. | Rather, the evidence shows that the less-lethal rounds were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward*** |
| 14 15 16 | | ***the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired |
| 17 18 19 | | lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, |
| 20 21 22 | | 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19- 22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas |
| 23 | | Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
| 24 25 | 97. Prior to firing their lethal rounds, no deputy issued a verbal warning that deadly force would be used. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |
| 26 27 28 | Ex. 1 to Leap Decl. ("Moore Depo.") at 51:6-8; Ex. 2 to Leap Decl. ("Pollick Depo.") at 26:9-12, 33:18- | Importantly, the evidence shows that the deputies on the scene were not able to give commands to Perez before to lethal force encounter occurred as the |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | | |
|---|---|---|
| 1<br>2<br>3 | | 23; Ex. 3 to Leap Decl. ("Olivas Depo.") at 25:6-8; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 76:15-22. | situation was very dynamic, uncertain, and rapidly-evolving.  *See* Pollick Depo. (Ex. "C") at 26:9-16, 33:18-23; Moore Depo. (Ex. "E") at 51:6-10 |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11 | 98. | In total, the deputies fired approximately 35 lethal rounds at Mr. Perez.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 45:20-22; Ex. 2 to Leap Decl. ("Pollick Depo.") at 43:8-11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 6:15-16; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 61:720. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving.  *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 99. | When the Deputies approached Mr. Perez after the shooting, McCarthy observed the gun near Mr. Perez's, left arm.<br><br>Ex. 4 to Leap Decl. ("McCarthy Depo.") at 71:11-16. | Disputed.<br><br>The evidence shows that Corporal Pollick and Corporal McCarthy saw that Perez was laying on top of the gun.  *See* Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 71:1-4, 8-12; Moore Depo. (Ex. "E") at 82:1-11, 83:13-22; Incident Audio (Ex. "J") at 36:00-37:20.<br><br>Further, Deputy Stone saw the gun sticking out from under Perez' stomach where his hands were also located, and kicked it away from him so that Corporal Pollick and Corporal McCarthy could start to provide medical aid.  *See* Stone Decl., ¶ 18; Pollick Depo. (Ex. "C") at 49:10-21; McCarthy Depo. (Ex. "D") at 70:16-19, 71:1-4; Moore Depo. (Ex. "E") at 81:14-25, Olivas Depo. (Ex. "F") at 52:14-18; Incident Audio (Ex. "J") at 36:00-37:20. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| 100.   Mr. Perez suffered at least eleven gunshot wounds, including to his head, right upper back/shoulder, and legs.<br><br>Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 12(a-i). | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving.  *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10.<br><br>Lastly, Bennet Omalu M.D.'s declaration [Doc. 45-11] is inadmissible.  *See* Defendants' Evidentiary Objections. |
| 101.   The trajectories of these bullet wounds indicate that Mr. Perez was falling to the ground or on the ground when he was shot.<br><br>Declaration of Bennet Omalu, M.D. ("Omalu Decl.") at ¶ 13(a-d, f-g, i). | Disputed in part.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action<br><br>The evidence shows that the deputies fired at ***Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone.  *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, |

73

| | |
|---|---|
| | 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23. |
| | Further, Sergeant Gaytan ordered the deputies to stop shooting as it appeared Perez had fallen to the ground and had stopped moving. *See* Pollick Depo. (Ex. "C") at 44:6-8; Gaytan Depo. (Ex. "I") at 45:10-46:21; Incident Audio (Ex. "J") at 31:49-32:10. |
| | Lastly, Bennet Omalu M.D.'s declaration [Doc. 45-11] is inadmissible. *See* Defendants' Evidentiary Objections. |

**Standards and Training on the Use of Deadly Force**

| | |
|---|---|
| 102.   At the time of this incident, the Deputies were trained, pursuant to basic police training, that deadly force can only be used where the officer has an objectively reasonable belief that the subject poses an immediate threat of death or serious bodily injury to the officers or others.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 69:3-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 18:20-20:11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 58:7-14; Ex. 2 to Leap Decl. ("Pollick Depo.") at 56:3-57:4; DeFoe Decl. at ¶ 5(e)-(f) | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>However, the evidence shows that after the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49- |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| | 31:57.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 103.   At the time of this incident, the Deputies were trained, pursuant to basic police training, that officers shall give a verbal warning before using deadly force, when feasible.<br><br>DeFoe Decl. at ¶ 5(d); Ex. 4 to Leap Decl. ("McCarthy Depo.") at 21:14-17; Ex. 3 to Leap Decl. ("Olivas Depo.") at 59:12-14; Ex. 1 to Leap Decl. ("Moore Depo.") at 70:14-18. | Disputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>First, the evidence cited does not support the fact asserted.  McCarthy's testimony states that a verbal warning that deadly force is going to be used "when feasible."  *See* Ex. 4 to Leap Decl. ("McCarthy Depo.") at 21:14-17.  Olivas stated a warning should be given "when reasonable."  *See* Ex. 3 to Leap Decl. ("Olivas Depo.") at 59:12-14.  Lastly, Moore stated that a warning should be given "depending on the circumstance when safe and feasible."  *See* Ex. 1 to Leap Decl. ("Moore Depo.") at 70:14-18.<br><br>Further, the evidence shows that the deputies on the scene ***were not able to give commands to Perez before to lethal force encounter occurred as the situation was very dynamic, uncertain, and rapidly-evolving.***  *See* Pollick Depo. (Ex. "C") at 26:9-16, 33:18-23; Moore Depo. (Ex. "E") at 51:6-10.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See* Defendants' Evidentiary Objections. |
| 104.   Basic police training provides that a subject's common reaction to being struck by less lethal munitions is to | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. |

75

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | |
|---|---|
| run away from the less lethal to avoid being struck by additional projectiles.<br><br>DeFoe Decl. at ¶ 15; Ex. 4 to Leap Decl. ("McCarthy Depo") at 56:17-21. | Importantly, the evidence shows that after the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to ***Perez accelerating toward the back of the pool table where the gun was located***, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 105.   At the time of this incident, basic police training provided, and the Deputies were trained, that deadly force is the highest level of force.<br><br>DeFoe Decl. at ¶ 5(a); Ex. 1 to Leap Decl. ("Moore Depo.") at 69:3-20; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 18:2020:11; Ex. 3 to Leap Decl. ("Olivas Depo.") at 58:7-14. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the evidence shows that based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. |

MANNING | KASS

| | |
|---|---|
| | (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the ***deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 106.   At the time of this incident, basic police training provided, and the Deputies were trained, that officers must have a reverence for human life.<br><br>DeFoe Decl. at ¶ 5(g); Ex. 4 to Leap Decl. ("McCarthy Depo.") at 19:16-19. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.<br><br>Importantly, the evidence shows that based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF
MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| | 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the ***deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone.  *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See* Defendants' Evidentiary Objections. |
| **The Shooting Was Inappropriate and Contrary to Basic Police Training** | |
| 107.   Under the facts of this case, the Deputies could not justify shooting at Mr. Perez simply because Mr. Perez was running away.<br><br>DeFoe Decl. at ¶ 6, 8. | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason |

78

| | |
|---|---|
| | than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the ***deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 108.   Under the facts of this case, the Deputies could not justify shooting at Mr. Perez under a fleeing felon theory.<br><br>DeFoe Decl. at ¶ 6, 8. | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason |

79

**MANNING | KASS**

| | |
|---|---|
| | than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the ***deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 109.   Police officers are trained that they can only justify shooting under the fleeing felon theory where (1) they have information that the suspect has committed an atrocious felony involving the infliction of injury or death, AND (2) the suspect poses an immediate threat of death or serious | Disputed.<br><br>San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, states that a deputy may use deadly force to protect himself or others from what he reasonably believes to be a threat of death or serious bodily injury. *See* Pollick |

80

| | |
|---|---|
| bodily injury.<br><br>DeFoe Decl. at ¶ 8. | Depo. (Ex. "C") at 56:13-19; Moore Depo. (Ex. "E") at 65:17-18, 22-24, 66:7-10, 14-18; Olivas Depo. (Ex. "F") at 58:11-14; Use of Force Policy (Ex. M").<br><br>Further, Since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore, Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves or others from what they reasonably believe to be an immediate threat of death or serious bodily injury. *See* Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M").<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 110.   At the time of this incident on August 29, 2021, Peace Officer Standards and Training ("POST"), Learning Domain 20, Chapter 3—Use of Deadly Force, set forth four requirements that would make it reasonable for an officer to use deadly force against a fleeing subject escaping on foot. None of the four requirements were met in this case. These four requirements are: | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. |

81

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| (1) ". . . if the subject threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious bodily harm [or death] . . ."<br><br>(2) ". . . probable cause to believe that the subject poses a threat of death or serious physical harm, either to the officer or others . . ."<br><br>(3) ". . .probable cause to believe that the use of deadly force is reasonably necessary . . ." [to prevent escape]". . . some warning be given prior to the use of deadly force where feasible. .<br><br>DeFoe Decl. at ¶ 8 (quoting POST LD 20, Ch. 3). | (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the ***deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor***. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 111.   Basic police training instructs, and the deputies were trained that they cannot shoot someone merely because they see a gun in that person's hands.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 66:2-18; Ex. 3 to Leap Decl. ("Olivas Depo.") at 60:16-21; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 12:19-21, 69:3-5. | Disputed.<br><br>San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, ***states that a deputy may use deadly force to protect himself or others from what he reasonably believes to be a threat of death or serious bodily injury***.  *See* Pollick Depo. (Ex. "C") at 56:13-19; Moore Depo. (Ex. "E") at 65:17-18, 22-24, 66:7-10, 14-18; Olivas Depo. (Ex. "F") at 58:11-14; Use of Force Policy (Ex. |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| 1 | | M"). |
|---|---|---|
| 2 | | |
| 3 | | Here, based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23. |

Here, based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.

Further, the evidence shows that the **deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor**. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.

Lastly, since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore,

83

| | |
|---|---|
| | Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves or others from what they reasonably believe to be an immediate threat of death or serious bodily injury. *See* Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M"). |
| 112.   When the Deputies fired their shots, there was no immediate threat of death or serious bodily injury.<br><br>DeFoe Decl. at ¶ 13 (a-l). | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

**MK MANNING | KASS**

someone.  *See* Pollick Depo. (Ex. "C")
at 27:2-8, 28:13-21; 39:16-18, 21-24.
56:20-22; McCarthy Depo. (Ex. "D")
at 59:4-11, 60:19-24, 65:13-18, 68:24-
69:1, 6-10; Moore Depo. (Ex. "E") at
43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-
6, 11-14, 52:7-13; Olivas Depo. (Ex.
"F") at 32:11-13, 22-25, 33:1-3; Stone
Depo. (Ex. "G") at 45:22-46:3, 7-18,
50:4-7, 11-15; Gaytan Depo. (Ex. "I")
at 38:1-23.

Importantly, since the Sheriff's
academy, Corporal McCarthy, Deputy
Olivas, Deputy Pollick, Deputy Moore,
Deputy Stone, and Sergeant Gaytan
have been trained in accordance with
San Bernardino County Sheriff's
Department Policy 3.608, The Use of
Lethal Force, that the use of lethal
force is justified to protect themselves
or others from what they reasonably
believe to be an immediate threat of
death or serious bodily injury.  *See*
Gaytan Decl., ¶ 17; McCarthy Decl., ¶
18; Olivas Decl., ¶ 18; Pollick Decl., ¶
18; Moore Decl., ¶ 18; Stone Decl., ¶
17; McCarthy Depo. (Ex. "D") at 13:6-
16, 19:1-8; Use of Force Policy (Ex.
M").

Lastly, Scott DeFoe's declaration
[Doc. 45-10] is inadmissible.  *See*
Defendants' Evidentiary Objections.

| | |
|---|---|
| 113.  The Deputies were trained on the importance of situational awareness, which includes avoiding "contagious fire."<br><br>DeFoe Decl. at ¶ 14; Ex. 1 to Leap | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendant's liability in this action.<br><br>Importantly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See* Defendants' Evidentiary Objections. |

85

MANNING | KASS

| | |
|---|---|
| Decl. ("Moore Depo.") at 33:22-8; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 50:23-25. | |
| 114.   Pursuant to the deputies' training, it would not have been appropriate to shoot Mr. Perez when he was sitting on the bar stool with the firearm in his hand with his finger on the trigger.<br><br>Ex. 1 to Leap Decl. ("Moore Depo.") at 28:20-29:7; Ex. 4 to Leap Decl. ("McCarthy Depo.") at 33:5-11. | Undisputed.  However, not material to Plaintiffs' claims and has no bearing on Defendant's liability in this action.<br><br>Further, the evidence shows the deputies *fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor.* The deputies reasonably believed that Perez was trying to get to the gun to shoot someone.  *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Importantly, in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions.  *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. |

86

| | | "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57. |
|---|---|---|
| 115. From the standpoint of police practices and basic police training, the Defendant Deputies' use of deadly force was contrary to Peace Officer Standards and Training ("POST"), improper, inappropriate, excessive, and unreasonable, including (but not limited to) for the following reasons:<br><br>(1) There was no immediate threat of death or serious bodily injury at the time of any of the shots.<br><br>(2) Mr. Perez was unarmed during all of the shots, and the Deputies knew that Mr. Perez had placed the gun on the ground before any force was deployed.<br><br>(3) The Deputies did not see Mr. Perez reach for the gun after he placed it on the ground, prior to the shooting.<br><br>(4) Mr. Perez was compliant during this incident.<br><br>(5) Mr. Perez was in the process of complying with Gaytan's command to turn around when the 40 mm rounds were deployed.<br><br>(6) The 40 mm deployment escalated the situation.<br><br>(7) At the time of the shooting, Mr. Perez was moving away from the 40 mm rounds and away from the deputies.<br><br>(8) At the time of the shooting, Mr. Perez was not advancing toward any | | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Further, the evidence shows that the deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") |

87

person.

(9) The Deputies could not shoot Mr. Perez for fleeing.

(10) Mr. Perez committed no crime involving the infliction of injury or death.

(11) Mr. Perez never threatened to use the firearm, never raised the firearm and never pointed the firearm at anyone.

(12) Mr. Perez never verbally threatened to harm anyone.

(13) Officers are required to justify every shot they fire, and here, all 35 shots were unjustified.

(14) The Deputies fired shots as Mr. Perez was going to the ground and after he was on the ground.

(15) The Deputies overreacted when they fired, and an overreaction in using deadly force can be excessive force.

(16) The Deputies engaged in contagious shooting.

(17) Under the facts of this case, the Deputies cannot justify shooting at Mr. Perez simply because Mr. Perez previously had a firearm in his hands.

(18) There were other reasonable alternative measures available rather than shooting, including the Taser and the beanbag shotgun, 40 mm launcher, giving further commands and a warning.

(19) The Deputies had information that Mr. Perez was mentally ill or experiencing a mental crisis and failed to respond appropriately.

(20) The Deputies did not give a verbal warning that they were prepared to use

at 38:1-23.

Importantly, since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore, Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves or others from what they reasonably believe to be an immediate threat of death or serious bodily injury. *See* Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M").

Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections.

| | |
|---|---|
| deadly force prior to shooting, despite it being feasible to do so.<br>(21)   Subjective fear, or fear of a potential future threat, is insufficient to justify a use of deadly force.<br>(22)   The Deputies showed no reverence for human life when they fired.<br><br>  DeFoe Decl. at ¶ 5-13(a – 1), 1417.<br><br>  Ex. 1 to Leap Decl. ("Moore Depo.") at 22:11-14, 45:17-46:11, 67:10-16; 67:23-24; 68:7-23;<br><br>  Ex. 2 to Leap Decl. ("Pollick Depo.") at 15:9-16:6, 27:2-11, 28:17-29:5, 43:8-11;<br><br>  Ex. 3 to Leap Decl. ("Olivas Depo.") at, 29:11-21, 32:18-21, 48:10-49:2, 62:5-21;<br><br>  Ex. 4 to Leap Decl. ("McCarthy Depo.") at 41:13-42:2, 59:7-11; 61:7-20, 66:19-67:7, 69:6-13;<br><br>  Ex. 6 to Leap Decl. ("Gaytan Depo.") at 20:20-21:7, 37:9-16, 38:24-40:1, 47:22-25;<br><br>  Ex. 7 to Leap Decl. ("Alcala Depo.") at 35:12-20, 52:9-14.<br>Ex. J to Anderson Decl. ("Incident Audio") 30:29-33:00. | |
| **Pre-Shooting Negligent Tactics and Escalation** | |
| 116.   The Deputies failed to employ appropriate situational awareness and appropriate tactics in this incident.<br><br>  DeFoe Decl. at ¶ 14. | Disputed.<br><br>Based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender |

MANNING | KASS

MANNING | KASS

peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun.  *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.

Further, the evidence shows that the deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor.  The deputies reasonably believed that Perez was trying to get to the gun to shoot someone.  *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.

Importantly, since the Sheriff's academy, Corporal McCarthy, Deputy Olivas, Deputy Pollick, Deputy Moore, Deputy Stone, and Sergeant Gaytan have been trained in accordance with San Bernardino County Sheriff's Department Policy 3.608, The Use of Lethal Force, that the use of lethal force is justified to protect themselves

90

**MK MANNING | KASS**

| | |
|---|---|
| | or others from what they reasonably believe to be an immediate threat of death or serious bodily injury. *See* Gaytan Decl., ¶ 17; McCarthy Decl., ¶ 18; Olivas Decl., ¶ 18; Pollick Decl., ¶ 18; Moore Decl., ¶ 18; Stone Decl., ¶ 17; McCarthy Depo. (Ex. "D") at 13:6-16, 19:1-8; Use of Force Policy (Ex. M").<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 117.   The Deputies failed to avoid contagious fire, meaning that they failed to assess whether a threat of imminent death or serious bodily injury was actually present when they shot, and instead fired because other deputies were firing.<br><br>DeFoe Decl. at ¶ 14. | Disputed.<br><br>The evidence shows that after the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 118.   The Deputies escalated the situation by deploying less lethal | Disputed. |

91

| | |
|---|---|
| rounds against a person who they had information may be mentally ill or experiencing a mental health crisis.<br><br>DeFoe Decl. at ¶ 16-17. | In response to Perez **suddenly** turning slightly east, stepping back with his left foot, and pivoting on his right foot Deputy Stone deployed a less-lethal 40-millimeter round***, as was discussed in the SED Teams planning briefing***, which hit Perez somewhere between his waist and the top of his shoulders. *See* Pollick Depo. (Ex. "C") at 20:25-21:8, 15-25, 22:1; McCarthy Depo. (Ex. "D") at 52:19-24, 53:12, 70:2-9, 67:17-19, 70:2-9; Moore Depo. (Ex. "E") at 34:23-35:17, 36:12-14, 18-24, 41:10-22, 54:10-15; Olivas Depo. (Ex. "F") at 20:3-7, 21:16-22:9, 50:1-3; Stone Depo. (Ex. "G") at 27:4-28:4, 8-25, 29:1-8, 12-17, 46:11-18, 48:19-49:6; Alcala Depo. (Ex. "H") at 48:7-15; Gaytan Depo. (Ex. "I") at 28:18-29:9, 32:18-33:4, 40:5-13; Incident Audio (Ex. "J") at 28:00-31:57.<br><br>Further, whether Perez was mentally ill is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action.  Further, Plaintiff presents no evidence to support that Perez was mentally ill.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible.  *See* Defendants' Evidentiary Objections. |
| 119.   The Deputies failed to give Mr. Perez time to comply with commands prior to deploying the 40 mm rounds and failed to give Mr. Perez time to comply with the 40 mm rounds prior to shooting.<br><br>DeFoe Decl. at ¶ 16-17. | Disputed.<br><br>In response to Perez **suddenly** turning slightly east, stepping back with his left foot, and pivoting on his right foot Deputy Stone deployed a less-lethal 40-millimeter round***, as was discussed in the SED Teams planning briefing***, which hit Perez somewhere between |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

MANNING | KASS

| | |
|---|---|
| 1 | his waist and the top of his shoulders. *See* Pollick Depo. (Ex. "C") at 20:25-21:8, 15-25, 22:1; McCarthy Depo. (Ex. "D") at 52:19-24, 53:12, 70:2-9, 67:17-19, 70:2-9; Moore Depo. (Ex. "E") at 34:23-35:17, 36:12-14, 18-24, 41:10-22, 54:10-15; Olivas Depo. (Ex. "F") at 20:3-7, 21:16-22:9, 50:1-3; Stone Depo. (Ex. "G") at 27:4-28:4, 8-25, 29:1-8, 12-17, 46:11-18, 48:19-49:6; Alcala Depo. (Ex. "H") at 48:7-15; Gaytan Depo. (Ex. "I") at 28:18-29:9, 32:18-33:4, 40:5-13; Incident Audio (Ex. "J") at 28:00-31:57.<br><br>Further, the evidence shows that after the less-lethal rounds had been deployed and were ineffective in gaining Perez' compliance, and in response to Perez accelerating toward the back of the pool table where the gun was located, Corporal Cory McCarthy, Deputy Olivas, Deputy Pollick, and Deputy Moore each fired lethal rounds, at Perez in order to stop the immediate threat they perceived from Perez' actions. *See* Pollick Depo. (Ex. "C") at 30:6-18, 22-25, 31:2-12, 55:22-56:1, 20-22; McCarthy Depo. (Ex. "D") at 59:4-11; 60:14-24; 63:19-22; 65:13-18; Moore Depo. (Ex. "E") at 43:1-8, 11-19, 64:19-25; Olivas Depo. (Ex. "F") at 24:13-15; Incident Audio (Ex. "J") at 31:49-31:57.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 120. Law enforcement officers are trained that they should attempt to de-escalate and utilize proper | Disputed in part.<br><br>The evidence shows that based on the |

93

| | |
|---|---|
| defusing techniques throughout an incident. In this case, there was no rush, as there was no crime in progress.<br><br>DeFoe Decl. at ¶ 17. | totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Importantly, the deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23.<br><br>Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
| 121.  The Deputies failed to respond appropriately, given that they had information Mr. Perez may have been | Disputed.<br><br>As an initial matter, whether Perez |

94

| | |
|---|---|
| experiencing a mental health crisis or was mentally ill.<br><br>DeFoe Decl. at ¶ 16. | was mentally ill is not material to Plaintiffs' claims and has no bearing on Defendants' liability in this action. Further, Plaintiff presents no evidence to support that Perez was mentally ill.<br><br>Further, the evidence shows that based on the totality of the circumstances, Perez having the gun in his hands for several hours and having every opportunity to surrender peacefully, the deputies had no reason to believe that Perez was running back into the garage for any other reason than to get back to the gun. *See* Pollick Depo. (Ex. "C") at 39:16-18, 21-24, 40:4-5, 9-13; McCarthy Depo. (Ex. "D") at 65:13-18; Stone Depo. (Ex. "G") at 45:22-46:3; Gaytan Depo. (Ex. "I") at 38:14-23.<br><br>Importantly, the deputies fired at Perez as he ran toward the back of the garage, rounding the corner of the pool table, dropped his center of gravity as if crouching down behind the pool table, within arms' reach of where the gun was located on the floor. The deputies reasonably believed that Perez was trying to get to the gun to shoot someone. *See* Pollick Depo. (Ex. "C") at 27:2-8, 28:13-21; 39:16-18, 21-24. 56:20-22; McCarthy Depo. (Ex. "D") at 59:4-11, 60:19-24, 65:13-18, 68:24-69:1, 6-10; Moore Depo. (Ex. "E") at 43:11-19, 44:2-12, 45:3-4, 8-12, 48:4-6, 11-14, 52:7-13; Olivas Depo. (Ex. "F") at 32:11-13, 22-25, 33:1-3; Stone Depo. (Ex. "G") at 45:22-46:3, 7-18, 50:4-7, 11-15; Gaytan Depo. (Ex. "I") at 38:1-23. |

MANNING | KASS

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

| | Lastly, Scott DeFoe's declaration [Doc. 45-10] is inadmissible. *See* Defendants' Evidentiary Objections. |
|---|---|

DATED:  March 22, 2024

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By:  _____/s/ Kayleigh A. Andersen, Esq._____
Eugene P. Ramirez, Esq.
Lynn Carpenter, Esq.
Kayleigh A. Andersen, Esq.
Attorneys for Defendants, COUNTY OF SAN BERNARDINO; CORY MCCARTHY, ANDREW POLLICK; DAVID MOORE, and CRISTINA OLIVAS

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

4

5

On March 22, 2024, I served true copies of the following document(s) described as **DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**  on the interested parties in this action as follows:

6

7

8

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq.
Shannon Leap, Esq.
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333
Fax: (818) 347-4118
Email:  dalekgalipo@yahoo.com;
sleap@galipolaw.com;
slaurel@galipolaw.com

9

10

11

12

13

*ATTORNEYS FOR PLAINTIFFS, A.J.P.,*
*AND A.M.P.. ET AL.*

14

15

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

16

17

18

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

20

Executed on March 22, 2024, at Los Angeles, California.

21

22

*Maria T. Castro*

23

Maria T. Castro

24

25

26

27

28

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS**