1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo, Esq. (SBN 144074)
   dalekgalipo@yahoo.com
3  Shannon J. Leap (SBN 339574)
4  sleap@galipolaw.com
   21800 Burbank Blvd., Suite 310
5  Woodland Hills, CA  91367
6  Tel: (818) 347-3333
   Fax: (818) 347-4111
7
8  *Attorneys for Plaintiffs*

9                UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
11

12 | A.J.P. and A.M.P., minors, by and | Case No. 5:22-cv-01291-SSS-SHK |
   | through their guardian *ad litem* | *Hon. Sunshine S. Sykes* |
13 | Cynthia Nunez, individually and as | **UNOPPOSED *EX PARTE*** |
14 | successor in interest to Albert Perez, | **APPLICATION FOR APPROVAL OF** |
   | deceased; and PATRICIA RUIZ, | **THE COMPROMISE OF THE** |
15 | individually, | **CLAIMS OF MINOR PLAINTIFFS** |
   | | **A.J.P., A.M.P.; VERIFICATION BY** |
16 |                  Plaintiffs, | **CYNTHIA NUNEZ** |
17 |         vs. | [Declaration of Shannon J. Leap and |
18 | COUNTY OF SAN BERNARDINO; | exhibits attached thereto, Declaration of |
   | CORY MCCARTHY; ANDREW | Dale K. Galipo; Delcaration of Melissa |
19 | POLLICK; DAVID MOORE; and | Baldwin; Verification by Cynthia Nunez; |
   | CHRISTINA OLIVAS, | Proposed Order and *filed concurrently* |
20 | | *herewith*] |
   |                  Defendants. | |
21

22
23
24
25
26
27
28

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiffs A.M.P. and A.J.P., by and through their guardian *ad litem*, Cynthia Nunez, individually and as a successor in interest to Albert Perez, deceased, hereby moves this Court by way of this unopposed *Ex Parte* Application for Approval of Compromise of the Claims of Minor Plaintiffs A.M.P. and A.J.P. ("Application") for an order approving the settlement of their claims and distribution of her settlement funds. Plaintiffs A.J.P. and A.M.P. ("Minor Plaintiffs") and their guardian *ad litem*, Petitioner Cynthia Nunez, make this Application pursuant to Central District Local Rule 7-19. The grounds for this Application are set forth in the Memorandum of Points and Authorities, which follows below, the Declaration of Shannon J. Leap ("Leap Decl."), the Delcaration of Dale K. Galipo ("Galipo Decl."), and the Declaration of Melissa Baldwin ("Baldwin Decl.") which are submitted concurrently herewith.

Prior to filing this *ex parte* application, Plaintiffs A.M.P. and A.J.P.'s counsel Shannon J. Leap contacted Defendants' counsel to confirm that Defendants will not be opposing the instant Application. Defendants are represented by Eugene P. Ramirez, Lynn Carpenter, and Kayleigh Andersen of Manning & Kass, Ellrod, Ramirez, Trester, 801 S Figueroa St 15th Floor, Los Angeles, CA 90017. Leap Decl. at ¶ 2. Defendants and their counsel do not oppose the filing of this Application on an *ex parte* basis, nor do Defendants and their counsel oppose the substance of this Application. Leap Decl. at ¶ 3.

This Application seeks approval of the compromise of the Minor Plaintiffs' claims on an *ex parte* basis because A.M.P. and A.J.P.'s guardian *ad litem*, after consulting with an annuity broker, vetting insurance companies, reviewing proposed annuity plans, and (through counsel) meeting and conferring with respect to this motion has chosen an annuity the interest rate for which is likely to expire if this petition is heard as a regularly noticed motion. The annuity interest rates expire on

September 10, 2024. Additionally, it can take up to 21 days for the County to purchase the annuities following the Court issuing an order. Leap Decl. at ¶ 4. However, the Securities Broker requires the order to be issued 30 days prior to the expiration date, which would be August 10, 2024. *See* Baldwin Decl. at ¶ 4. For that reason, filing this Application as a regularly noticed motion may cause a decrease in payment benefits to the minor plaintiffs because the secured interest rates may expire in the time it takes for an order to be issued, and for the County to subsequently purchase the annuities. Leap Decl. at ¶ 4; Baldwin Decl. at ¶ 5.

If review of the application is not expedited and exceeds the funding deadline of September 10, 2024, the rates and annuity payments will expire. Baldwin Decl. at ¶ 6.  No rate extensions are possible and the delay in funding will negatively affect the Minors payments. Baldwin Decl. at ¶ 6. Failure to approve prior to the deadline would decrease the interest rates, lessen the annuity payments, and decrease of guaranteed return of the structured annuity benefits to the Minors as rates have changed since originally locked in and Secured. Baldwin Decl. at ¶ 6.

Additionally, Plaintiffs have not caused this crisis themselves. The need for *ex parte* relief stems from the duration for which the interest rates on the annuity packages are secured. Filing this petition as a regularly noticed motion risks delay in the Court's ruling, issuing the order, and shrinking the time necessary for the County to purchase the annuities from the life insurance company prior to the expiration date. Leap Decl. at ¶ 4

Plaintiffs acted diligently following the settlement's approval on May 21, 2024. At that time, the Law Offices of Dale K. Galipo finalized the costs in the case. Additionally, because the different Plaintiffs have different standing for the different legal claims they may bring in the case, and different damages they may seek based on their claims, Plaintiffs needed to agree upon a fair and appropriate disbursement based on these different claims. The agreed upon gross distribution of the $4,750,000 was as follows: Plaintiff A.J.P. to receive a gross amount of $1,750,000;

Plaintiff A.M.P. to receive a gross amount of $1,750,000; and Plaintiff Patricia Ruiz to receive a gross amount of $1,250,000. Leap Decl. at ¶ 4.

Once this disbursement was agreed upon and finalized, on June 4, 2024, Attorney for Plaintiffs, Shannon Leap calculated the pro-rata share of costs and attorneys' fees to be deducted from each Plaintiffs' portion of the gross settlement, in accordance with the signed retainer agreement. Leap Decl. at ¶ 4.  On June 5, 2024, Ms. Leap notified settlement annuities broker, Ms. Melissa Baldwin of the resulting net amount for minor Plaintiff A.J.P. and A.M.P. of $1,031,346.07, each. Leap Decl. at ¶ 4.  On June 7, 2024, Ms. Baldwin sent four proposed annuities for A.J.P. and A.M.P., which guardian ad litem, Ms. Cynthia Nunez, needed to review to select the annuity breakdown in the best interests of each A.J.P. and A.M.P., respectively. On June 12, 2024, Ms. Nunez confirmed the proposed annuity structures that she believed would be in the best interests of A.J.P. and A.M.P., respectively. Leap Decl. at ¶ 4.  On June 17, 2024, Ms. Baldwin informed Ms. Leap that the interest rates for the selected annuities were finalized and that the rates would expire on September 10, 2024. Leap Decl. at ¶ 4. Finally, lead trial counsel, Dale K. Galipo, was in trial out of state for two weeks and was unable to review the final draft of the instant petition until his return to the office the week of July 1, 2024. Leap Decl. at ¶ 4; Galipo Decl. at ¶ 16. Importantly, Plaintiffs have no control over the time period or duration for which the rates are secured.

For the last approximately five years, the Law Offices of Dale K. Galipo has requested court approval through *ex parte* applications, because the structured annuities have interest rates that expire anywhere from 60-90 days after they are secured. Galipo Decl. at ¶ 3. Additionally, courts and opposing counsel have agreed to hearing the unopposed minor's compromise heard on an *ex parte* basis for judicial efficiency purposes. Galipo Decl. at ¶ 3. Often, District Courts – understandably, given the Central District's uniquely high volume of cases – can sometimes take longer than this period to rule on any motion if it is regularly

noticed, including one for a minor's compromise. Galipo Decl. at ¶ 3. Moreover, in the event that a court denied the motion, Plaintiffs would likely need to re-start the annuity interest rates process over again and secure new rates, because the original interest rates would likely expire prior to a re-filing and new order was issued on a subsequent petition for a minor's compromise. Galipo Decl. at ¶ 3. In so doing, it is possible that the subsequent interest rates would decrease from the original rates. Baldwin Decl. at ¶ 5. Additionally, it can take 21-30 days from the issuance of the order for defendants to purchase the annuities. Galipo Decl. at ¶ 3; Baldwin Decl. at ¶ 4.

Moreover, given that Defendants do not oppose the substance of this request for approval of a minor's compromise, nor the filing of it as an *ex parte* application, in an effort to reduce the burden on the Court to conduct a hearing on the matter, and in the interests of efficiency due to the restrictive timeline of the annuity interest rates, we filed the application on an *ex parte* basis, as we have for the approximate last five years. Galipo Decl. at ¶ 4.

Plaintiffs apologize to the Court for filing this petition for the minors' compromise on an *ex-parte* basis for what will be a third, and final time, and for any inconvenience it has caused. Galipo Decl. at ¶ 5. However, given that the interest rates were secured on June 17, 2024, and they will expire on September 10, 2024, filing this petition as a regularly noticed motion, will result in the interest rates expiring before the County would likely be able to purchase the annuities. Galipo Decl. at ¶ 5; Baldwin Decl. at ¶ 5. The minor plaintiffs will suffer prejudice if securing new rates is required. If Plaintiffs filed this as a regularly noticed motion, the earliest date for which the motion could be noticed is August 16, 2024. If the Court issued an order shortly thereafter, there would be a high risk that the County of San Bernardino would not be afforded sufficient time to purchase the annuity prior to the rates expiring, which can take up to 30 days. Galipo Decl. at ¶ 5.

Should the Court find that *ex parte* relief is not warranted here, or should

otherwise deny Plaintiffs' application, Plaintiffs will need to re-start the annuities process and secure new rates on the annuities for their structured settlements. Plaintiffs would plan to file the request for the approval of those settlement structures as a regularly noticed motion, and notify the Court of the limitations of the timeline. Galipo Decl. at ¶ 6.

Accordingly, Petitioner Cynthia Nunez as guardian *ad litem* for minor plaintiffs A.M.P. and A.J.P. respectfully request that this Court consider this Application on an *ex parte* basis. Leap Decl. at ¶ 4.


DATED: July 18, 2024          LAW OFFICES OF DALE K. GALIPO


                              __/s/ Shannon J. Leap_____
                              Dale K. Galipo
                              Shannon J. Leap
                              *Attorneys for Plaintiffs A.M.P. and A.J.P.*

**UNOPPOSED *EX PARTE* APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF MINOR PLAINTIFFS A.M.P. and A.J.P.**

**I.     INTRODUCTION**

Plaintiffs A.M.P. and A.J.P., by and through their guardian *ad litem*, Cynthia Nunez, individually and as successors in interest to Albert Perez, deceased, hereby submit this *ex parte* application and proposed order for approval of the compromise of the claims of minor Plaintiffs A.M.P. and A.J.P. ("Application"), and request that this Honorable Court approve of the proposed distribution of the Minor Plaintiffs' funds.

The instant claims of the Minor Plaintiffs arose out of the shooting of Albert Perez ("the decedent") on August 29, 2021, by deputies working for the San Bernardino County Sheriff's Department.  Plaintiffs A.M.P. and A.J.P. are the decedent's biological children and his lawful successors in interest.  In addition to the Minor Plaintiffs, the decedent's mother, Patricia Ruiz, is a plaintiff in this action. The parties reached a conditional settlement of $4,750,000, subject to the County of San Bernardino Board of Supervisor's approval. The settlement was formally approved by the proper authorities on or around May 21, 2024.  The settlement agreement obligates Defendants to pay to Plaintiffs and their attorneys $4,750,000. Leap Decl. at ¶ 5.

**II.     DISCUSSION**

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors.  Rule 17(c) provides, in relevant part, that a district court must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c).  In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district "court [to] conduct its own inquiry to determine whether the settlement serves the

7

UNOPPOSED *EX PARTE* APPLICATION FOR APPROVAL OF COMPROMISE OF CLAIMS OF MINOR PLAINTIFFS A.J.P. AND A.M.P.

best interests of the minor." *Dacanay v. Mendoza,* 573 F.2d 1075, 1080 (9th Cir. 1978); *see also Salmeron v. United States,* 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem.").

> Although the district court has a special duty to safeguard the interests of minor plaintiffs, that duty requires only that the district court determine whether the net amount distributed to each minor plaintiff in the proposed settlement is fair and reasonable, without regard to the proportion of the total settlement value designated for adult co-Plaintiffs and contracted by them with Plaintiffs' counsel. If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as proposed.

*Robidoux v. Rosengren*, 638 F.3d 1177, 1179 (9th Cir. 2011).

In this case, a $4,750,000 global settlement is fair and reasonable. Given that the highest plaintiff's verdict in a wrongful death civil rights case in recent years in the Riverside Courthouse in the Central District of California is $4,500,000. Galipo Decl. at ¶ 10. Mr. Galipo, and the Law Offices of Dale K. Galipo tried that case. *Id.* The shooting incident in that case was captured on body worn cameras, which the jury was able to view. *Id.* The Decedent in that case was also not alleged to have had a gun, as the Decedent in this case is. *Id.*

This case presented certain challenges that would be particularly uncertain if it proceeded to trial. *Id.* at ¶ 8. From an evidentiary perspective, there was no body camera video footage of the shooting, nor were there any percipient witnesses to the shooting incident other than the Deputies employed by Defendant County of San Bernardino. *Id.* at ¶ 8. At trial, Plaintiffs would have needed to build their case against defendants primarily on the testimony of the involved deputies, other privileged forensic evidence, and medical evidence. *Id.* at ¶ 8.

The facts of this case were also particularly difficult. First and foremost, the Decedent in this case, Mr. Albert Perez ("Mr. Perez") did have a gun in his hand or on his person for several hours while deputies from the San Bernardino County Sheriff's Department ("SBSD") negotiated with him to put the gun down and surrender, where for several hours he refused to do so. *Id.* at ¶ 9. Mr. Perez was also slow to comply with the Deputies' commands, although he eventually did comply with at least four of their commands to put the gun down, stand up from the stool, walk towards the deputies at the mouth of the garage, and stop near the threshold of the garage. *Id.* Moreover, on Defendants' facts, once Mr. Perez understood he was being arrested after following these commands, he quickly turned around and moved toward and for the gun that he had previously laid on the ground. *Id.* Additionally, on Defendants' facts, the deployment of less-lethal rounds against Mr. Perez was ineffective. *Id.* A jury could potentially find that if the decedent was going for the gun he was previously holding, then the defendants had a right to use deadly force to defend themselves. *Id.*

Settlement in this case was also advantageous for Plaintiffs from a procedural perspective. *Id.* at ¶ 10. At the time of the settlement, Defendants' Motion for Summary Judgment was pending. *Id.* Plaintiffs filed their opposition as well. *Id.* It is possible that if this Court denied summary judgment, Defendants would have filed an interlocutory appeal to the Ninth Circuit Court of Appeals, further delaying the trial or resolution of the case by at least a year. *Id.* Furthermore, there would be no guarantee that Plaintiffs would prevail at trial even if the case proceeded to trial. *Id.* Additionally, even if the jury returned a verdict in Plaintiffs' favor, there is no guarantee the jury would have found that Plaintiffs were entitled to damages in the amount that Plaintiffs are guaranteed to receive by virtue of the settlement. *Id.* This is especially true, given that among the highest plaintiff's verdicts in a wrongful death shooting case in recent years in the Federal Courthouse in Riverside in the Central District of California is $4,500,000, in the case *V.R., et al. v. County of San*

*Bernardino, et al.* (Case No.: 5:19-cv-01023-JGB-SP). *Id.* In that case, there were body worn camera videos and the Decedent was not armed with a gun. *Id.* Securing a settlement in this case for $4,750,000 is very advantageous for the Plaintiffs. *Id.*

Moreover, the distribution of the global settlement amount among the individual plaintiffs is also reasonable, and reflects what a jury may have awarded each plaintiffs, based on their claims and corresponding entitlement to either wrongful death or survival damages. Plaintiff Patricia Ruiz is receiving approximately 26% of the global settlement amount, and the minor Plaintiffs, A.J.P. and A.M.P. share equally 74% of the global settlement amount. *Id.* at ¶ 11.

Plaintiff Patricia Ruiz, as the decedent's mother, has claims for 1) interference with her familial relationship with her son, Mr. Perez, under the Fourteenth Amendment and sought wrongful death damages under that claim; 2) Battery under state law, and sought wrongful death damages under that claim; and 3) Negligence under state law, and sought wrongful death damages under that claim. (Dkt. No. 36, Second Amended Complaint ("SAC"); and Dkt. No. 45, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment). At the time of his death Mr. Perez lived with Plaintiff Patricia Ruiz and she relied to some extent on his financial support for the necessities of life. (Galipo Decl. at ¶ 12; See also SAC, Dkt. No. 36).

If the case proceeded to trial, and if the jury were instructed on the model jury instructions for both Excessive Use of Force under the Fourth Amendment (Ninth Cir. Jury Instruction No. 9.25), and Battery by a Police Officer (CACI 1305(b)), a jury could find that Defendants' use of force both violated the Fourth Amendment and constituted battery. A jury could have therefore find that Ms. Ruiz could recover sizeable wrongful death damages for Defendants' excessive use of force through her claim for battery, given that she does not have standing to assert a claim under the Fourth Amendment. Galipo Decl. at ¶ 12. Additionally, a jury could have reasonably awarded Ms. Ruiz a high amount of non-economic wrongful death damages for the loss of Mr. Perez's love, companionship, comfort, care, assistance,

10

protection, affection, society, and moral support, as outlined in CACI 3921 and 3905. Galipo Decl. at ¶ 12. For these reasons, disbursement of the global settlement of $1,250,000 to Plaintiff Patricia Ruiz is fair, appropriate, and reflects what a reasonable jury could have awarded her. *Id.*

Additionally, the disbursement to the minor plaintiffs is also reflective of their claims in the case and corresponding sought damages. Plaintiffs A.J.P. and A.M.P. have claims for the following: 1) Unreasonable Search and Seizure for excessive force under the Fourth Amendment, seeking survival damages; 2) Interference with their Familial Relationship with their father, under the Fourteenth Amendment, seeking wrongful death damages; 3) Battery under state law, seeking survival damages and wrongful death damages; 4) Negligence under state law, seeking survival damages and wrongful death damages; 5) Violation of the Bane Act (California Civil Code, Section 52.1), seeking survival damages. (Dkt. No. X, SAC).

It is also reasonable, based on the facts of this case and their survival claims, that a jury could have awarded Plaintiffs A.J.P. and A.M.P. higher damages than Plaintiff Patricia Ruiz, as is reflected in the disbursement of the global settlement agreement. The gross disbursement to minors A.J.P. and A.M.P. of $1,750,000, each, reflects their claims above, as well as the fact that Mr. Perez did not live with them at the time of his death, nor in the years prior. Nevertheless, Mr. Perez did maintain a present, positive, and consistent relationship with them both, taking them fishing and on camping trips. A jury could reasonably award a sizeable amount of survival and wrongful death damages to both A.J.P. and A.M.P. for the loss of their father, as individuals, and for their father's loss of life, as his successors-in-interest. Galipo Decl. at ¶ 13. Therefore, the gross distribution of the global settlement to each of the Plaintiffs, including the Minor Plaintiffs is fair and reasonable.

California Code of Civil Procedure Section 372 and California Rules of Court, rule 3.1384 refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts.  California Rule of Court, rule

11

3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure Section 372 must comply with rules 7.950, 7.951, and 7.952."

Pursuant to the above California rules, the Minor Plaintiffs and their attorneys make the following disclosures:

1. The Petitioner is Cynthia Nunez, guardian *ad litem* for minor plaintiffs A.M.P. and A.J.P. Plaintiffs A.M.P. and A.J.P. are represented by the Law Offices of Dale K. Galipo.

2. Plaintiff A.J.P. is female. She was born in 2013. Plaintiff A.J.P. is the biological daughter of the decedent in this case, Albert Perez.

3. Plaintiff A.M.P. is a female. She was born in 2009. Plaintiff A.M.P. is the biological daughter of the decedent in this case, Albert Perez.

4. The nature of the Minor Plaintiffs' claims in this lawsuit is set forth in the operative complaint filed in this action. The parties conditionally settled the case in its entirety on March 27, 2024 for $4,750,000. Leap Decl. at ¶ 6. The settlement was approved by the relevant Boards of Approval on May 21, 2024. Leap Decl. at ¶ 6.

5. The Minor Plaintiffs' damages in this case arise from (1) the injuries suffered by the decedent, for which the Minor Plaintiffs can recover survival damages as successors in interest; and (2) Minor Plaintiffs' individual loss of the decedent's comfort, care, companionship, training, support, and guidance (wrongful death damages). Leap Decl. at ¶ 7.

6. Medical treatment and medical billing are not relevant. Plaintiffs A.M.P. and A.J.P.'s have not received medical treatment in connection with this case.

7. The total amount of the settlement that Defendants agree to pay is $4,750,000. Of the $4,750,000 gross settlement amount, $1,750,000 is proposed to be distributed to A.J.P. and her attorneys, $1,750,000 is proposed to be distributed to

12

A.M.P. and her attorneys, and $1,250,000 is proposed to be distributed to Patricia Ruiz and her attorneys. Plaintiffs' attorneys are requesting attorneys' fees in the amount of 40 percent of the $4,750,000 gross settlement proceeds. The attorneys' fees will be disbursed to the Law Offices of Dale K. Galipo. Leap Decl. at ¶ 8.

The contingency retainer agreements between Plaintiffs and their attorneys provide for a 40 percent contingency fee. The attorneys' fees will be split between Plaintiffs on a pro rata basis with their gross settlement allocation, such that Plaintiffs' attorneys are requesting $700,000 in attorneys' fees from the gross settlement proceeds allocated to A.J.P.; $700,000 in attorneys' fees from the gross settlement proceeds allocated to A.M.P.; and $500,000 in attorneys' fees from the gross settlement proceeds allocated to Patricia Ruiz. Leap Decl. at ¶ 8.

8. Plaintiffs' attorneys are also requesting reimbursement of advanced litigation costs in the amount of $50,416.03, which will be borne by the Plaintiffs on a pro rata basis with their gross settlement allocation. Therefore, plaintiffs' attorneys are requesting $18,653.93 in costs from A.J.P.'s portion of the funds, $18,653.93 from A.M.P.'s portion of the funds, and $13,108.17 from Ms. Ruiz.  In addition to these pro rata shares of the costs, Leap Decl. at ¶ 9-10.

9. Under the existing retainer agreements, Plaintiffs' attorneys are due a 40 percent attorney recovery fee, plus reimbursement of advanced litigation costs. The contingency attorney fee award in this case is clearly justified, including by: the $4,750,000 settlement; attorney Dale K. Galipo's skill and experience in the civil rights field; the difficulties and complexities of this case; the risk assumed by Plaintiffs' counsel; and the time and expense of litigating this matter and opposing Defendants' motion for summary judgment.  Plaintiffs litigated this case for two years, from case initiation and filing, through fact and expert discovery, opposing Defendants' motion for summary judgment, and completely preparing the case to go to trial in July 2024, until the parties reached a settlement. Plaintiffs' attorneys, including attorney Shannon J. Leap, devoted significant time to this case in order to

13

achieve the settlement, including but not limited to: (1) reviewing and analyzing hours of audio belt recording footage, numerous interview transcripts, and voluminous reports; (2) conducting expert discovery, including depositions; (3) conducting and defending many fact witness depositions; (4) opposing Defendants' motion for summary judgment. Leap Decl. at ¶ 11. Plaintiffs' original attorney on this case, Mr. Jorge Gonzalez, unexpectedly passed away in March of 2022. Mr. Gonzalez was also an experienced civil rights attorney, as well as Mr. Galipo's friend and colleague. Mr. Gonzalez's office, by way of his widow, referred the case to the Law Offices of Dale K. Galipo, entrusting Mr. Galipo and his firm to work the case up and achieve a successful result for Plaintiffs. There was no settlement offer until the mediation, which was after all of the work up on the case, including expert discovery and opposing defendants' motion for summary judgement. Leap Decl. at ¶ 11.

The contingency attorney fee award in this case is justified by attorney Dale K. Galipo's skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel in this difficult case. Mr. Galipo is one of the most successful and experienced civil rights attorneys in the country. Mr. Galipo has been elected as a "Super Lawyer" every year since the year 2013. In 2019, Mr. Galipo was selected to the Inner Circle of Advocates, considered to represent the top one hundred civil plaintiff's attorneys in the United States. Also in 2019, Mr. Galipo was elected as a Fellow of the American College of Trial Lawyers, which is recognized as the preeminent organization of trial lawyers in North America. In 2020, Mr. Galipo received the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles ("CAALA"). Also in 2020, Mr. Galipo received the "2020 Consumer Attorney of the Year" award from the Consumer Attorneys of California ("CAOC"). Leap Decl. at ¶ 11.

Some of Mr. Galipo's recent notable verdicts include the following: $13,500,000 verdict in the restraint death case *Zelaya v. City of Los Angeles*, tried in

federal court before the Honorable Otis Wright, II in October 2023; $23,800,000
verdict in the police shooting case *Murillo v. City of Los Angeles*, tried in federal
court before the Honorable Fernando M. Olguin in August 2023; $10,000,000
verdict in the case *Najera v. County of Riverside*, tried in federal court in April
2023; $17,002,000 verdict in the case *French v. City of Los Angeles*, tried in
October 2021 before the Honorable Jesus G. Bernal; $13,200,000 verdict in the
police in-custody death case *Valenzuela v. City of Anaheim*, tried in November 2019
before the Honorable Cormac J. Carney.  Leap Decl. at ¶ 11.

Mr. Galipo has recently been awarded statutory attorney fee rates over $1,000
an hour and up to $1,400 an hour by multiple federal courts.  In *Najera-Aguirre v.
County of Riverside,* tried in federal court in April of 2023 in front of the Honorable
Dolly M. Gee, Judge Gee awarded Mr. Galipo an hourly rate of $1,250. In *Zelaya v.
City of Los Angeles,* tried in federal court in October of 2023 in front of the
Honorable Otis D. Wright III, Judge Wright awarded Mr. Galipo an hourly rate of
$1,300. In *French v. City of Los Angeles*, Judge Bernal awarded Mr. Galipo $1,100
per hour for his work in that case at the district court level. In the same case, after
the plaintiffs prevailed against the City's appeal, Judge Bernal awarded Mr. Galipo
$1,400 per hour for attorney fees on appeal, in an order dated February 21, 2024.
Mr. Galipo's hourly rates as awarded by these federal judges supports Plaintiffs'
attorneys' request for the full 40% contingency attorney fee in this case. Leap Decl.
at ¶ 11.

Additionally, this case involved a substantial amount of risk.  If Plaintiffs'
attorneys were not awarded a significant compensatory fee in difficult civil rights
cases of public importance, then attorneys would not be able to take such cases.  In
turn, plaintiffs such as A.M.P. and A.J.P. would not be able to attract competent
counsel who could achieve similar results and achieve justice for victims of police
brutality.  Accordingly, Plaintiffs and their attorneys submit that they are deserving
of the requested 40 percent contingency attorney recovery fee in this case with

respect to A.M.P. and A.J.P.'s portions of the settlement.  Leap Decl. at ¶ 12.

10.  As stated above, the gross amount of the settlement is $4,750,000. After deducting requested contingency attorneys' fees of $700,000 and costs in the amount of $18,653.93, the total net settlement proceeds to A.J.P. is $1,031,346.07. After deducting requested contingency attorneys' fees of $700,000 and costs in the amount of $18,653.93, the total net settlement proceeds to A.M.P. is $1,031,346.07. The share of the settlement proceeds apportioned for Plaintiff Ms. Ruiz and her attorneys is $1,250,000. After deducting requested attorneys' fees of $500,000 and costs in the amount of $13,108.17, the total net settlement to Patricia Ruiz is $735,891.83.  Leap Decl. at ¶ 13.

11.  It is requested that $1,031,346.07 be used to fund a structured settlement annuity for Plaintiff A.M.P.  Attached as "Exhibit A" to the Declaration of Shannon J. Leap is the proposed structured settlement annuity and disbursement schedule for A.M.P.  Under the proposal set forth in "Exhibit A," the total amount that Plaintiff A.M.P. shall receive directly after the final payment is made to her is $1,817,225.08.  Leap Decl. at ¶ 13.  A.M.P.'s guardian *ad litem*, Petitioner Cynthia Nunez, has reviewed the proposed annuity and disbursement schedule for A.M.P. set forth in "Exhibit A" and believes it is in the best interest of A.M.P.  Leap Decl. at ¶ 13.

12.  It is requested that $1,031,346.07 be used to fund a structured settlement annuity for Plaintiff A.J.P.  Included in "Exhibit A" attached to the Declaration of Shannon J. Leap is the proposed structured settlement annuity and disbursement schedule for A.J.P.  Under the proposal set forth in "Exhibit A," the total amount that Plaintiff A.J.P. shall receive directly after the final payment is made to her is $2,379,537.12.  Leap Decl. at ¶ 13.  A.J.P.'s guardian *ad litem*, Petitioner Cynthia Nunez, has reviewed the proposed annuity and disbursement schedule for A.J.P. set forth in "Exhibit A" and believes it is in the best interest of A.J.P.  Leap Decl. at ¶ 13.

16

13.   The interest rates secured for these annuities expire on September 10, 2024. Additionally, it can take up to 21 days for the County to purchase the annuities following the Court issuing an order. For that reason, filing this Application as a regularly noticed motion may cause a decrease in payment benefits to the minor plaintiffs because the secured interest rates may expire in the time it takes for an order to be issued, and for the County to subsequently purchase the annuities. Leap Decl. at ¶ 4.

14.   The moving guardian *ad litem* Cynthia Nunez has no claims against Defendants in connection with the subject incident.

15.   The moving guardian *ad litem* Cynthia Nunez does not have any claims against Plaintiffs A.J.P. or A.M.P. in connection with the subject incident.

16.   California Welfare and Institutions Code Section 14124.73 does not apply.

17.   This motion does not seek an order for payment of money to a special needs trust.  Leap Decl. at ¶ 14.

<u>Disclosures pursuant to California Rule of Court 7.951</u>

1.   This petition was prepared by attorney Shannon J. Leap (California State Bar Number 339574), of the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, which represents Plaintiffs A.J.P. and A.M.P. in this action.  Leap Decl. at ¶ 15.

2.   Plaintiffs A.J.P. and A.M.P.'s attorneys did not become concerned with this matter at the instance of any party against whom the claim of said minor is asserted.  Leap Decl. at ¶ 16.

3.   Plaintiffs A.J.P. and A.M.P.'s attorneys are not employed by any other party, or any insurance carrier involved in the matter, except by Plaintiff Patricia Ruiz.  Leap Decl. at ¶ 17.

4.   Plaintiffs A.J.P. and A.M.P.'s attorneys have not to date received any compensation for their services in connection herewith from any person.  Leap Decl.

17

at ¶ 18.

5.     Plaintiffs A.J.P. and A.M., and Patricia Ruiz are the only Plaintiffs in the above-referenced action.  Plaintiffs' attorneys, including the Law Offices of Dale K. Galipo, expect to receive $1,900,000 in contingency attorneys' fees as set forth above.  Leap Decl. at ¶ 19.

6.     Plaintiffs' attorneys accepted this engagement for a contingency fee, plus reimbursement for any costs advanced.  The retainer agreements with all plaintiffs provide for a 40 percent contingency attorney fee on any recovery Plaintiffs make on their case by way of verdict or settlement. Leap Decl. at ¶ 20.

Petitioner's Endorsement

Petitioner has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident giving rise to Plaintiffs A.M.P. and A.J.P.'s claims, the parties responsible for the incident, and the nature, extent and seriousness of the Plaintiffs A.M.P. and A.J.P.'s claims.  Petitioner further understands that if the compromise proposed in this petition is approved by the Court and is consummated, Plaintiffs A.M.P. and A.J.P.'s will be forever barred from seeking any further recovery of compensation even though Plaintiffs A.M.P. and A.J.P.'s injuries and losses might in the future appear to be more serious than they are now thought to be.  Petitioner Ms. Nunez is informed and believes that Plaintiffs A.M.P. and A.J.P. has made sufficient recovery from the effects of their injuries and losses so as to justify the resolution of this matter in accordance with the terms of the settlement agreement.  Petitioner recommends the compromise and the proposed distribution to Plaintiffs A.M.P. and A.J.P. to the Court as being fair, reasonable, and in the best interest of Plaintiffs A.M.P. and A.J.P. and requests that the Court approve this compromise settlement and make such other and further orders as may be just and reasonable.  Accordingly, Petitioner Cynthia Nunez, guardian *ad litem* for minor Plaintiffs A.M.P. and A.J.P., requests that this Honorable Court enter the proposed annuity attached to the Leap Decl. as "Exhibit

18

1 | A" for Plaintiffs A.M.P. and A.J.P.

2 | **III.    <u>CONCLUSION</u>**

3 |      For the reasons above, Petitioner Cynthia Nunez and Plaintiffs A.M.P. and

4 | A.J.P., through their guardian *ad litem*, respectfully submit that this Court should

5 | enter the proposed order and "Exhibit A" and "Exhibit B" submitted concurrently

6 | herewith.

7 |

8 | Respectfully submitted,

9 |

10 | DATED: July 18, 2024       LAW OFFICES OF DALE K. GALIPO

11 |

12 |         */s/ Shannon J. Leap*

13 |        Dale K. Galipo
       Shannon J. Leap

14 |        *Attorneys for Plaintiffs*