LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Shannon J. Leap Esq. (SBN 339574)
Email: sleap@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4111

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.J.P. and A.M.P., minors, by and through their guardian *ad litem* Cynthia Nunez, individually and as successor in interest to Albert Perez, deceased; and PATRICIA RUIZ, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORY MCCARTHY; ANDREW POLLICK; DAVID MOORE; and CHRISTINA OLIVAS,<br><br>Defendants. | Case No. 5:22-cv-01291-SSS-SHK<br>*Hon. Sunshine S. Sykes*<br><br>**DECLARATION OF DALE K. GALIPO IN SUPPORT OF PLAINTIFFS' UNOPPOSED *EX PARTE* APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF MINOR PLAINTIFFS A.J.P. AND A.M.P.** |

## DECLARATION OF DALE K. GALIPO

1. I am an attorney licensed to practice law in the United States District Court for the Central District of California. I am one of the attorneys of record for the Plaintiffs in this action. I have personal knowledge of the matters stated herein and would and could testify competently thereto if called. I make this declaration in support of Plaintiffs A.J.P. and A.M.P.'s *ex parte* application for approval of the compromise of the claims of minor Plaintiffs A.J.P. and A.M.P.'s by and through their guardian *ad litem*, Cynthia Nunez, individually and as successors in interest to Albert Perez, deceased.

2. Since 1991, I have managed my own law firm. For the last twenty-two years, I have specialized in handling police misconduct civil rights litigation, and I take on very difficult liability cases that require extensive expertise in this area of law.

3. I have worked on hundreds of civil rights cases, most of which settle, though many of which do proceed to trial. In all of my firm's cases involving minor plaintiffs, in Federal Court, we request the presiding District Court to finalize the minor plaintiff's claims through a minor's compromise, as the law and local rules require. For the last approximately five years, we have made this request through *ex parte* applications, because the structured annuities have interest rates that expire anywhere from 60-90 days after they are secured. Additionally, the Courts and opposing counsel have agreed to hearing the unopposed minor's compromise heard on an *ex parte* basis for efficiency purposes. Often, District Courts – understandably, given the Central District's uniquely high volume of cases – can sometimes take longer than this period to rule on any motion if it is regularly noticed, including one for a minor's compromise. Moreover, in the event that a court denied the motion, Plaintiffs would likely need to re-start the annuity interest rates process over again and secure new rates, because the original interest rates would likely expire prior to a re-filing and new order on a second petition for a minor's

compromise. In so doing, it is possible that the subsequent interest rates would decrease from the original rates. Additionally, it can take 30 days from the issuance of the order for defendants to purchase the annuities.

4. Moreover, given that Defendants do not oppose the substance of this request for approval of a minor's compromise, nor the filing of it as an *ex parte* application, in an effort to reduce the burden on the Court to conduct a hearing on the matter, and in the interests of efficiency due to the restrictive timeline of the annuity interest rates, we filed the application on an *ex parte* basis, as we have for the approximate last five years.

5. We apologize to the Court for filing this petition for the minors' compromise on an *ex-parte* basis for what will be a third, and final time, and for any inconvenience it has caused. However, given that the interest rates were secured on June 17, 2024, and they will expire on September 10, 2024, filing this petition as a regularly noticed motion, at this point, will result in the interest rates expiring before the County would likely be able to purchase the annuities. The minor plaintiffs will suffer prejudice if securing new rates is required. If Plaintiffs filed this as a regularly noticed motion, the earliest date for which the motion could be noticed is August 16, 2024. If the Court issued an order shortly thereafter, there would be a high risk that the County of San Bernardino would not be afforded sufficient time to purchase the annuity prior to the rates expiring, which can take up to 30 days.

6. Should the Court find that *ex parte* relief is not warranted here, or should otherwise deny Plaintiffs' application, Plaintiffs will need to re-start the annuities process and secure new rates on the annuities for their structured settlements. Plaintiffs would plan to file the request for the approval of those settlement structures as a regularly noticed motion, and notify the Court of the limitations of the timeline.

7. Based on my experience and expertise in this field, I sincerely believe that a settlement in this case was appropriate, fair, and in the best interests of

Plaintiffs.

8. This case presented certain challenges that would make taking it to trial particularly risky. From an evidentiary perspective, there was no body camera video footage of the shooting, nor were there any percipient witnesses to the shooting incident other than the Deputies employed by Defendant County of San Bernardino. At trial, Plaintiffs would have needed to build their case against defendants primarily on the testimony of the involved deputies, other privileged forensic evidence, and medical evidence.

9. The facts of this case were also particularly difficult. First and foremost, the Decedent in this case, Mr. Albert Perez ("Mr. Perez") did have a gun in his hand or on his person for several hours while deputies from the San Bernardino County Sheriff's Department ("SBSD") negotiated with him to put the gun down and surrender, where for several hours he refused to do so. Mr. Perez was also slow to comply with the Deputies' commands, although he eventually did comply with at least four of their commands to put the gun down, stand up from the stool, walk towards the deputies at the mouth of the garage, and stop near the threshold of the garage. Moreover, on Defendants' facts, once Mr. Perez understood he was being arrested after following these commands, he quickly turned around and moved toward and for the gun that he had previously laid on the ground. Additionally, on Defendants' facts, the deployment of less-lethal rounds against Mr. Perez was ineffective. A jury could potentially find that if the decedent was going for the gun he was previously holding, then the defendants had a right to use deadly force to defend themselves.

10. Settlement in this case was also advantageous for Plaintiffs from a procedural perspective. At the time of the settlement, Defendants' Motion for Summary Judgment was pending. Plaintiffs filed their opposition as well. It is possible that if this Court denied summary judgment, Defendants would have filed an interlocutory appeal to the Ninth Circuit Court of Appeals, further delaying the

trial or resolution of the case by at least a year. Furthermore, there would be no guarantee that Plaintiffs would prevail at trial even if the case proceeded to trial. Additionally, even if the jury returned a verdict in Plaintiffs' favor, there is no guarantee they would have found that Plaintiffs were entitled to damages in the amount that Plaintiffs are guaranteed to receive by virtue of the settlement. This is especially true, given that, to the best of my knowledge, the highest plaintiff's verdict in a wrongful death shooting case in recent years in the Federal Courthouse in Riverside in the Central District of California is $4,500,000, in the case *V.R., et al. v. County of San Bernardino, et al.* (Case No.: 5:19-cv-01023-JGB-SP), which I tried. In that case, there were body worn camera videos and the Decedent was not armed with a gun. Securing a settlement in this case for $4,750,000 is, in my opinion, very advantageous for the Plaintiffs.

11. This case settled for $4,750,000. The breakdown of the global settlement amount of $4,750,000 among the Plaintiffs is reasonable and reflects what a jury may have awarded to the individual plaintiffs, given their claims in this case. Plaintiff Patricia Ruiz is receiving approximately 26% of the global settlement amount, and the minor Plaintiffs, A.J.P. and A.M.P. share equally 74% of the global settlement amount.

12. Plaintiff Patricia Ruiz, as Decedent's mother, has claims for 1) interference with her familial relationship with her son, Decedent, under the Fourteenth Amendment and sought wrongful death damages under that claim; 2) Battery under state law, and sought wrongful death damages under that claim; and 3) Negligence under state law, and sought wrongful death damages under that claim. At the time of his death Mr. Perez lived with Plaintiff Patricia Ruiz and she relied to some extent on his financial support for the necessities of life. Given that the standard for excessive use of force is essentially the same under the Fourth Amendment as it is for battery, a jury could have found that Ms. Ruiz could recover sizeable wrongful death damages for Defendants' excessive use of force through her

claim for battery. A jury could have reasonably awarded Ms. Ruiz a high amount of non-economic wrongful death damages for the loss of Mr. Perez's love, companionship, comfort, care, assistance, protection, affection, society, and moral support, as outlined in CACI 3921 and 3905. I believe a disbursement of the global settlement of $1,250,000 to Plaintiff Patricia Ruiz is fair, appropriate, and reflects what a reasonable jury could have awarded her.

13. Plaintiffs A.J.P. and A.M.P. have claims for the following: 1) Unreasonable Search and Seizure for excessive force under the Fourth Amendment, seeking survival damages; 2) Interference with their Familial Relationship with their father, under the Fourteenth Amendment, seeking wrongful death damages; 3) Battery under state law, seeking survival damages and wrongful death damages; 4) Negligence under state law, seeking survival damages and wrongful death damages; 5) Violation of the Bane Act (California Civil Code, Section 52.1), seeking survival damages. It is also reasonable, based on the facts of this case and their survival claims, that a jury could have awarded Plaintiffs A.J.P. and A.M.P. higher damages than Plaintiff Patricia Ruiz, as is reflected in the disbursement of the global settlement agreement. The gross disbursement to minors A.J.P. and A.M.P. of $1,750,000, each, reflects their claims above, as well as the fact that Mr. Perez did not live with them at the time of his death, nor in the years prior. Nevertheless, Mr. Perez did maintain a present, positive, and consistent relationship with them both, taking them fishing and on camping trips. A jury could reasonably award a sizeable amount of survival and wrongful death damages to both A.J.P. and A.M.P. for the loss of their father, as individuals, and for their father's loss of life, as his successors-in-interest.

14. Plaintiffs litigated this case for two years, from case initiation and filing, through fact and expert discovery, opposing Defendants' motion for summary judgment, and completely preparing the case to go to trial in July 2024, until the parties reached a settlement. Plaintiffs' attorneys, including attorney Shannon J.

1  Leap, devoted significant time to this case in order to achieve the settlement,
2  including but not limited to: (1) reviewing and analyzing hours of audio belt
3  recording footage, numerous interview transcripts, and voluminous reports; (2)
4  conducting expert discovery, including depositions; (3) conducting and defending
5  many fact witness depositions; (4) opposing Defendants' motion for summary
6  judgment.

7  15.  Therefore, given the inherit challenges of this case, it is my professional
8  opinion, having litigated these cases for over twenty-two years, that settling this case
9  for $4,750,000 was a very favorable settlement, and in the best interests the
10 Plaintiffs.

11 16. I was out of state in trial for two weeks and returned to the office the week of
12 July 1, 2024. Once I returned to the office, I reviewed the final draft of the
13 previously filed petition, which was then filed. (Dkt. No. 53).

14 17. Plaintiffs seek approval of the minor plaintiffs' compromises on an *ex parte*
15 basis because their guardian *ad litem*, after consulting with an annuity broker, has
16 chosen an annuity the interest rates which will expire on September 10, 2024.

17      I declare under penalty of perjury of the laws of the United States of America
18 that the foregoing is true and correct, and that this declaration was executed this 18th
19 day of July 2024, at Woodland Hills, California.

                                  /s/ *Dale K. Galipo*
                                  Dale K. Galipo